BERG & ANDROPHY
DAVID BERG (*pro hac vice* to be filed)
CHRIS GADOURY (*pro hac vice* to be filed)
3704 Travis St.
Houston, TX 77002
Telephone: (713) 529-5622
dberg@bafirm.com
cgadoury@bafirm.com

THE GOLAN LAW FIRM
YVETTE GOLAN (*by pro hac vice*)
1919 Decatur St.
Houston, TX 77007
Telephone: (866) 298-4150 ext. 101
ygolan@tgfirm.com

FLASHPOINT LAW, INC.
SHIRISH GUPTA (SBN 205584)
1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
Telephone: (650) 539-4019
sgupta@flashpointlaw.com

Attorneys for Plaintiff Sara Sandys

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA SANDYS and all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>NAKED JUICE COMPANY, a California corporation; PEPSICO INC., a New York corporation; and DOES 1-100,<br><br>                    Defendants. | Case No. LA CV11-08007-JAK (PLAx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS**<br><br>Hearing<br>Date:      December 19, 2011<br>Time:      1:30 p.m.<br>Place:     Courtroom 750, 7th Floor<br><br>Action Filed: September 27, 2011 |

# TABLE OF CONTENTS

INTRODUCTION…………………………...…………………………...……….……...…1

FACTUAL BACKGROUND…. …………………………………………………….3

    I.    *Sandys*: the First-Filed Action and the First to Uncover Defendants'
Wrongs……………………………………………...……..…………………3

    II.    Unnamed members of Sandys' putative class file duplicative
suits……………………………………………………………….……4

    III.    Each of the duplicative, later-filed complaints are entirely subsumed within
*Sandys*……….……...……….……...……….……...……...……...……...……4

ARGUMENT & AUTHORITIES……………………………………………….6

    I.    The parties agree that judicial intervention is necessary to avoid the
inefficiencies and injustice the duplicative suits bring, but disagree on
the appropriate procedure …………………………………………......6

    II.    The later-filed plaintiffs must avail themselves of Rule 23's procedures
designed to protect their interests, not file needless, duplicative suits……...…..8

    III.    This Court should stay the duplicative, later-filed actions under
Rule 42(a)(3) and the principles of federal comity………...……...……...……9

    IV.    Applicable law prohibits Defendants' consolidation proposal………...……….11

        A.    There is no legal authority for consolidating class
action that seeks to represent the same class and
assert the same claims……………………………………………….12

        B.    The Ninth Circuit prohibits the consolidation of suits yet to be
filed……………………………………………………...………….......15

        C.    A master consolidated complaint is not allowed over Plaintiff's
objection……...……….……...……...……...……...……...……...…....16

    V.    Consolidation would yield no benefit to the swift administration of justice…....17

    VI.    Consolidation Would cause undue prejudice………...……...……...……...……18

    VII.    The Motion to Consolidate and Motion to Appoint Interim Co-Lead Counsel filed
by Pappas, Evans, and Marchewka illustrate the inefficiencies of consolidation.
…………...……….……...……...……...……...……...……...……19

CONCLUSION………………………………...……...……...………..……...…......21

1

## TABLE OF AUTHORITIES

2

**CASES**

3

Adams v. California Dept. of Health Services,
   487 F.3d 684 (9th Cir. 2007) ................................................................. 10

4

AEP Energy Services Gas Holding Co. v. Bank of America, N.A.,
   626 F.3d 699 (2d Cir. 2010) .................................................................. 10

5

Bradley v. Milliken,
   828 F.2d 1186 (6th Cir. 1987) ............................................................ 8, 9

6

Cantrell v. GAF Corp.,
   999 F.2d 1007 (6th Cir. 1993) ......................................................... 18, 19

7

Catanese v. Unilever,
   774 F.Supp.2d 684 (D. N.J. 2011) ......................................................... 11

8

Crosley Corp. v. Hazeltine Corp.,
   122 F.2d 925 (3d Cir. 1941) .................................................................. 11

9

E.E.O.C. v. HBE Corp.,
   135 F.3d 543 (8th Cir. 1998) ................................................................. 12

10

Ferguson Corinthian Colleges Inc.,
   SACV 11-0127 DOC, 2011 WL 1519352  (C.D. Cal. Apr. 15, 2011) ................ 14

11

Hagan v. Coca-Cola Bottling Co.,
   804 So.2d 1234 (Fla. 2001)..................................................................... 5

12

Hawaii-Pacific Venture Capital Corp. v. Rothbard,
   564 F.2d 1343 (9th Cir. 1977) ............................................................ 9, 16

13

Hawecker v. Sorensen,
   1:10-CV-00085 OWW, 2011 WL 1560809  (E.D. Cal. Apr. 22, 2011)............... 14

14

Huene v. United States,
   743 F.2d 703 (9th Cir. 1984) ................................................................. 14

15

In re Adams Apple, Inc.,
   829 F.2d 1484 (9th Cir. 1987) ............................................................... 14

16

In re Equity Funding Corp. of Am. Sec. Litig.,
   416 F. Supp. 161 (C.D. Cal. 1976) ......................................................... 13

17

In re P.D.,
   166 P.3d 127 (Ariz. App. 2007).............................................................. 5

18

Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of California,
   877 F.2d 777 (9th Cir. 1989) ................................................................. 14

19

Leone v. Moore,
   C 07-4073PJH, 2007 WL 2972639 (N.D. Cal. Oct. 10, 2007)...................... 15

20

Lovell v. United Airlines, Inc.,
   728 F. Supp. 2d 1096 (D. Haw. 2010) ..................................................... 11

21

Mills v. Beech Aircraft Corp., Inc.,
   886 F.2d 758 (5th Cir. 1989) ........................................................ 12, 18, 19

22

Mohanty v. BigBand Networks, Inc.,
   C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008)..................... 13

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

Morgan v. McDonough,
   726 F.2d 11 (1st Cir. 1983) ............................................................................ 9

Pacesetter Systems, Inc. v. Medtronic, Inc.,
   678 F.2d 93 (9th Cir. 1982) ........................................................................... 10

Pan Am. World Airways, Inc. v. U.S. Dist. Court for Cent. Dist. of California,
   523 F.2d 1073 (9th Cir. 1975) ................................................................. 15, 17

Peak v. Green Tree Financial Servicing Corp.,
   No. 00-953, 2000 WL 973685 (N.D. Cal., July 7, 2000) ................................ 11

Perez-Funez v. Dist. Dir., I.N.S.,
   611 F. Supp. 990 n6 (C.D. Cal. 1984) .......................................................... 14

Schueneman v. Arena Pharmaceuticals, Inc.,
   10CV2335 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ................ 13

Sparano v. Lief, 10CV2079 BTM BLM,
   2011 WL 830109  (S.D. Cal. Mar. 3, 2011) ......................................... 13, 14, 16

Telephonics Corp. v. Lindly & Co.,
   291 F.2d 445 (2d Cir. 1961) .......................................................................... 10

Thomas E. Seidel v. United States,
   5:09-CV-04875-JF, 2011 WL 1120023  (N.D. Cal. Mar. 28, 2011) ................. 16

U.S. v. Alpine Land & Reservoir Co.,
   174 F.3d 1007 (9th Cir. 1999) ...................................................................... 10

Vincent v. Hughes Air West, Inc.,
   557 F.2d 759 (9th Cir. 1977) ........................................................................ 14

Wade v. Goldschmidt,
   673 F.2d 182 n7 (7th Cir.1982) .................................................................. 9, 20

Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,
   679 F.Supp.2d 1287 (D. Kan. 2010) (applying the first-to-file rule and ............ 11

Ward v. Follett Corp.,
   158 F.R.D. 645 (N.D. Cal. 1994) ................................................................... 10

Waudby v. Verizon Wireless Services, LLC,
   248 F.R.D. 173 (D. N.J. 2008) ...................................................................... 20

Weinstein v. Metlife, Inc., No. C-06-444 SI,
   2006 WL 3201045 (N.D. Cal., Nov. 6, 2006) ................................................ 11

**STATUTES**

15 U.S.C.A. § 78u-4 .................................................................................. 13, 15

15 U.S.C.A. § 78u-4(a)(3)(B)(ii) ........................................................................ 13

15 U.S.C.A. § 78u-4(a)(3)(B)(iii) ....................................................................... 13

15 U.S.C.A. § 78u-4(a)(3)(B)(v) ........................................................................ 13

28 U.S.C. §§ 2201-2202 ................................................................................... 5

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) & 23(d)(1)(B) ............................................................ 8

iv

Fed. R. Civ. P. 23(d) ........................................................................................... 7
Fed. R. Civ. P. 24 ................................................................................................ 9
Fed. R. Civ. P. 42 .............................................................................................. 15
Fed. R. Civ. Proc. 19(a) ..................................................................................... 16
Fed. R. Civ. Proc. 42(a)(3) ................................................................... 2, 7, 9, 10
Rule 23 ................................................................................... 8, 11, 17, 18
Rule 24 ................................................................................................. 7

**REGULATIONS**

40 C.F.R. § 116.4 ................................................................................................ 3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

**INTRODUCTION**

When Sara Sandys filed a putative national class action against a major beverage company, the class action industry took notice.  Unlike many food-and-beverage cases, the *Sandys* complaint was based entirely on its own investigation, not a prior governmental action, and it was the first public disclosure of the startling wrongs committed by a beverage company that based its entire brand on being an all-natural, eco-friendly "naked fruit" juice company.

Not surprisingly, unnamed class members wanted a seat at the table.  Duplicative suits were soon filed,[1] bringing the same claims against the same Defendants, seeking to represent the same class of consumers.  Defendants filed a Motion to Consolidate these duplicative actions with the *Sandys* complaint.  Later that day, filing in their own cases but not in the *Sandys* case, three of these duplicative suits filed a joint motion to consolidate the four cases and to appoint their counsel as interim lead counsel, excluding Sandys' chosen attorneys.

More of these duplicative suits will likely be filed in the future.  In fact, the day that Defendants' filed their Motion to Consolidate, a fifth duplicative suit was filed.  *Park v. Naked Juice Co. of Glendora, Inc. et al.,* No. LA CV 11-09677 GHK (CWx).[2]  Understandably, both Sandys and Defendants seek a method to control the circus that these duplicative cases create.  Sandys is eager to have her claims heard on the merits, and Defendants want to avoid giving claimants multiple bites at the apple and/or inconsistent results.  The  only issue before this Court is what procedure would best achieve these goals.

---

[1] *Pappas v. Naked Juice Co. of Glendora, Inc., et al*., No. LA CV-11-08276 PSG (JEM) (filed October 5) ("Pappas"), which has been transferred to this Court; *Marchewka v. Naked Juice Co. of Glendora, Inc*., No. SA CV-11-01701 DOC (RNPx), filed on November 7 ("Marchewka"), which has been transferred to this Court; and (3) *Evans v. Naked Juice Co. of Glendora, Inc., et al.*, No. LA CV-11-9412-GW (PJWx), filed on November 10 ("Evans").

[2] Sandys has requested but has not received the *Park* complaint.  Thus, for the time being, Sandys refers this Court to Defendants' assertions that this case is a related action.  *See* Defendants' Notice of Related Cases (L.R. 83-1.3), filed November 23, 2011.

Sandys respectfully submits that this Court should stay, dismiss, or enjoin all related litigation currently pending under Fed. R. Civ. Proc. 42(a)(3) and the first-to-file doctrine, and instruct the named representatives in the duplicative suits to follow the Rule 23 safeguards Congress designed to protect unnamed class members' interests, such as objection and opt-out procedures. *First,* a stay under Rule 42(a)(3), application of the first-to-file doctrine, and refusal to permit improper intervention under the guise of "consolidation" would treat all class members fairly and give no undue advantage to those class members who ignored Rule 23's mandate and clogged the court dockets with needlessly duplicative litigation. *Second*, a stay respects the rules of federal comity, promotes the swift administration of justice, and assists this Court in discouraging the filing of duplicative lawsuits.

Sandys opposes Defendants' motion to consolidate the three duplicative actions with her own action, and opposes the order of a consolidated master complaint. *First,* there being no benefit to consolidation, no legal authority exists to consolidate class actions that represent the same class and pursue the same claims. In fact, it took an act of Congress to permit consolidation of private securities class actions, and Congress elected to not allow this procedure to be used in non-securities cases such as the one here. *Second,* the Ninth Circuit prohibits Defendants' requested consolidation of suits that have yet to be filed, and thus Defendants' consolidation and master consolidated complaint procedure would have to be repeated again after each duplicative case is brought to this Court – whether it be a month from now or a year from now. *Finally,* consolidation saves this Court no time, but causes substantial prejudice to the class members, including needless delay and discovery burdens, and unfairly rewards class members who filed duplicative suits while denying this benefit to unnamed class members who followed Rule 23 procedures.

**FACTUAL BACKGROUND**

**I.     *Sandys*: the First-Filed Action and the First to Uncover Defendants' Wrongs**

In the hopes of capturing the expanding market of environmentally- and health-conscious consumers willing to pay more for all-natural beverages, Naked Juice Co.[3] and its parent company, PepsiCo Inc., labeled many of their juice beverage products as "all natural" "100% juice," "100% fruit," and as containing no genetically modified organisms or ingredients ("non-GMO"), and made other false representations.  After an extensive factual investigation of food chemistry and the ingredients used in Defendants' beverages, Plaintiff Sara Sandys filed a putative national class action in this Court against Defendants on September 27, 2011, seeking to end their fraud.

The legal basis for the suit was not remarkable, but the facts were.  The so-called "all natural" products did not have just one or two questionable ingredients, but significant amounts of chemical compounds that are federally-listed and known synthetic compounds, proprietary synthetic digestion-resistant fibers, genetically modified ingredients, and other compounds prepared from federally regulated toxins and pollutants.  For example, Defendants added choline bitartrate, a compound listed as a synthetic substance by federal agencies, and produced by reacting ethylene oxide with trimethylamine and tartaric acid, both hazardous substances. 40 C.F.R. § 116.4.   Defendants misleadingly claim on the beverage packages that this synthetic compound is the same as the nutrient "choline" (found in grains, nuts and beans), despite the fact that choline bitartrate ($C_9H_{19}NO_7$) is altogether a different substance than choline ($C_5H_{14}NO$).

---

[3] Upon information and belief, Naked Juice Co. of Glendora, Inc. commonly does business as "Naked Juice Co.," and Defendants have accepted service of process on Naked Juice Co.  *See* Joint Stipulation Extending Time to Answer Complaint, October 18, 2011.  In addition, every bottle of Naked Juice identifies "Naked Juice Co." as the product's manufacturer, not "Naked Juice Co. of Glendora, Inc."

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

**II.     Unnamed members of Sandys' putative class file duplicative suits.**

More than a week after *Sandys* was filed, an unnamed member of Sandys' putative class, Natalie Pappas, filed suit, seeking to represent the same class of consumers against the same Defendants, bringing the same claims based on the same allegations included in *Sandys*.  *Pappas v. Naked Juice Co. of Glendora, Inc., et al.*, No. LA CV-11-08276 PSG (JEM) (filed October 5) ("*Pappas*").  The *Pappas* action was later transferred to this Court on November 1, 2011.

More than a month after *Sandys* was filed, Russell Marchewka, also a member of Sandys' putative class, filed suit, seeking to represent the same class of consumers against the same Defendants, bringing the same claims based on the same allegations as *Sandys*.  *Marchewka v. Naked Juice Co. of Glendora, Inc.*, No. SA CV-11-01701 DOC (RNPx) (filed November 7) ("*Marchewka*").  *Marchewka* was later transferred to this Court on November 14, 2011.

A few days later, Christopher Evans, again a member of Sandys' putative class, filed a similarly duplicative suit.  *Evans v. Naked Juice Co. of Glendora, Inc., et al.*, No. LA CV-11-9412-GW (PJWx) (filed November 10) ("*Evans*").  *Evans* has not yet been transferred to this Court.

**III.    Each of the duplicative, later-filed complaints are entirely subsumed within *Sandys*.**

None of the duplicative, later-filed cases seek to represent any consumer not already included in *Sandys'* putative class.  None of these later-filed cases sue a party not already sued in *Sandys*.  None bring a claim not brought and none seek a remedy not sought in *Sandys*.  None challenge an ingredient not challenged in *Sandys*, and none allege facts not alleged in *Sandys*.

However, *Sandys* brings claims that none of these later-filed suits bring.  *Sandys* seeks remedies that none of them seek, represents consumers that none of them represent, and challenge ingredients and allege facts that none of the later-filed cases pursue.

<u>*Products*</u>.    *Sandys* challenges twenty-seven products, almost twice as many as

4

*Marchewka* (challenging 14 products), and more than 2.5 times as many as *Pappas* and *Evans* (each challenging 11 products). *Sandys* Compl. Pars. 49-54, 115, Ex. 2; *Marchewka* Compl. Par. 65; *Evans* Compl. Pars. 22, 52; *Pappas* Compl. Pars. 21, 42.

*Ingredients*. Only *Sandys* challenge Defendants' ingredients as containing genetically-modified organisms ("GMOs"), contrary to Defendants' promise on every beverage's package to be "non-GMO." None of the duplicative cases make this challenge.

For all but two ingredients, the only challenge *Evans* and *Pappas* make is that the ingredients are "not juice." In comparison, *Sandys* challenges these ingredients also as being synthetic or otherwise processed in a manner that render it no longer natural, and that some of the ingredients are also chemically distinct from the vitamin they are claimed to be.

*Plaintiffs*. Because *Sandys* challenges 13-15 products not challenged in the other three suits, and because *Sandys* affirmatively pleads fraudulent concealment tolled the statute of limitations, *Sandys* represents a larger class of consumers than *Pappas*, *Evans*, and *Marchewka*.

*Claims*. None of the suits bring a claim for fraudulent concealment, and none of the suits bring the intentional torts that *Sandys* brings, such as fraud, product liability, Restatement (Third) of Torts: Products Liability § 7 ("a harm-causing ingredient of the food product constitutes a defect if a reasonable consumer would not expect the food product to contain that ingredient."); assault and battery, *In re P.D.*, 166 P.3d 127, 129 (Ariz. App. 2007) (affirming criminal assault conviction, holding that "no reason exists to conclude that a substance placed in food or drink for ingestion must be harmful to be a touching"), and other causes of action.

*Remedies*. None of the suits seek the remedies that *Sandys* requests, such as punitive damages, constructive trust, accounting, declaratory judgment under California law, New York Law, and 28 U.S.C. §§ 2201-2202, recall, disclosure of the nature, identity, and method of producing the "natural flavors," and emotional distress. *See, e.g., Hagan v. Coca-Cola Bottling*

5

*Co.,* 804 So.2d 1234, 1241 (Fla. 2001) ("a plaintiff need not prove the existence of a physical injury in order to recover damages for emotional injuries caused by the consumption of a contaminated food or beverage" and recognizing "a cause of action based on the ingestion of a contaminated food since ingestion itself constitutes an impact" even absent physical injury).

## ARGUMENT & AUTHORITIES

**I.     The parties agree that judicial intervention is necessary to avoid the inefficiencies and injustice the duplicative suits bring, but disagree on the appropriate procedure.**

Sandys agrees with Defendants that absent some Court action, these duplicative lawsuits will cause unnecessary delay, cost, and inefficiency.  Sandys disagrees with Defendants on the correct procedure.

Defendants seek three devices to control the duplicative suits:  consolidation of the duplicative class actions, consolidation of similar class actions that have not yet been filed, and ordering a master consolidated complaint.  However, no statute, no rule, and no case permit the consolidation of national class actions that bring the same claims and represent the same consumers. The Ninth Circuit prohibits the consolidation of actions not yet filed, and Defendants fail to cite any authority for ordering a master consolidated complaint over the plaintiff's objection.  Moreover, because future suits cannot be consolidated, Defendants' proposed procedures would have to be repeated again and again every time a duplicative suit is filed. Judicial efficiency is not served by such an absurd result. Finally, because Defendants' solution does not capture the suits that might be filed outside this district, Defendants' proposal does not remedy the problem that these duplicative suits bring.

Duplicative suits are to be dismissed or stayed under the first-to-file doctrine, not rewarded with special "consolidated" status that is no more than improper intervention prohibited by Ninth Circuit case law.  If an unnamed member of a class action wants an opportunity to be heard, he must follow the procedures Congress laid out in Rule 23, such as

6

intervention, objection to the representative or counsel, or by opting out of the class -- **not** by filing a separate, duplicative action and later attempting an end-run around Rule 23 by seeking consolidation. *See* Fed. R. Civ. P. 23(d).

Counsel representing the three unnamed members of Sandys' putative class action followed none of these procedures.  Instead, each filed a separate class action, bringing no new claims, alleging no new facts, on behalf of the same consumers and suing the same defendants. None even conferred with Sandys' counsel before filing their suit.

Instead of rewarding these litigants' filing of needless suits, Sandys recommends this Court employ the rules and procedures already established by Congress and the courts to handle duplicative class actions. If the named plaintiffs in *Pappas, Evans*, and *Marchewka* feel their interests are not adequately protected, they should abide by the intervention procedures Congress promulgated in Rules 23 and 24 that give them the opportunity to be heard.  They should *not* file duplicative suits, and they should *not* clog the courts with motions before there is any indication that their interests are not protected.

Sandys urges this Court follow the long line of case law and apply the first-to-file rule and stay or dismiss the duplicative suits pending in this district, and enjoin the litigants from proceeding with the duplicative suits pending in other courts.

Thus, pursuant to Rule 42(a)(3), Sandys respectfully requests this Court **stay** all the duplicative or related cases until judgment in the present case, and ***deny*** the Defendants' Motion to Consolidate.  Fed. R. Civ. P. 42(a)(3) ("If actions before the court involve a common question of law or fact, the court may . . . issue any other orders to avoid unnecessary cost or delay."). *See also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2382 (3d ed.) (noting that "consolidation is used in three different senses," including "[w]hen all except one of several actions are stayed until one is tried, in which case the judgment in the one trial is conclusive as to the others.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

In the alternative, Sandys requests this Court treat the duplicate actions as opt-outs, and allow them to continue as individual claims, and not as class actions.

## II.   The later-filed plaintiffs must avail themselves of Rule 23's procedures designed to protect their interests, not file needless, duplicative suits.

Pappas, Evans, and Marchewka naturally want to ensure that their interests are represented.  And Rule 23 of the Federal Rules of Civil Procedure establishes how these class members can bring additional claims, object to a settlement, intervene, opt out of the class, and be heard on whether the representation is fair and adequate. *See* Fed. R. Civ. P. 23(c)(2)(B) & 23(d)(1)(B).

The unnamed class members' rush to the courthouse is thus premature.  There is no indication that their interests are not being represented, and their duplicative filings only delay their quest for available remedies.  Counsel did not even attempt informal methods of safeguarding their clients' interests before filing their cases, and none even tried to contact Sandys' counsel before filing their "me too" cases.

In effect, then, any attempted "consolidation" is no more than an improper attempt to make an end-run around the strict rules governing intervention in class actions.  Congress enacted Rule 23 to avoid the flood of unnamed class members vying for a seat at the table.  So long as the named plaintiff passes the requirements of Rule 23 and adequately represents their interests, unnamed class members do not have an unfettered right to be included as class representatives.

In order to intervene, the unnamed class members must "establish that the present class representatives will not adequately protect that interest." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (affirming denial of unnamed class members' motion to intervene in class action alleging racial discrimination).  "A mere disagreement over litigation strategy . . . does

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

not, in and of itself, establish inadequacy of representation." *Id.* at 1192. *See also* Fed. R. Civ. P. 24, Advisory Committee Notes to the 1966 Amendment (permitting intervention by "[a] class member who claims that his 'representative' does not adequately represent him, and is able to establish that proposition with sufficient probability"); *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (affirming denial of shareholder's intervention in class action, rejecting the notion of an automatic right to intervene as it "would abandon completely the general notion that a plaintiff may control his action").

A class member fails to justify intervention and fails to demonstrate inadequate representation "when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty." *Wade v. Goldschmidt,* 673 F.2d 182, 186 n7 (7th Cir.1982) (per curiam) (affirming denial of intervention)*; see also Morgan v. McDonough,* 726 F.2d 11, 14 (1st Cir. 1983) (affirming denial of intervention, reasoning that the requirement that "matters not be adequately represented by others . . . is critical in a school desegregation context, because it serves to prevent "a cluttering of lawsuits with multitudinous useless intervenors.") (internal quotation marks omitted).

Here, there is no evidence that Sandys or her counsel have colluded with Defendants, no evidence that Sandys or her counsel have interests adverse to the plaintiffs, and no evidence that they have failed in fulfilling their duty to the class. Because the plaintiffs in the later-filed actions cannot properly intervene, they should not be permitted to join Sandys' action under the guise of "consolidation."

## III.   This Court should stay the duplicative, later-filed actions under Rule 42(a)(3) and the principles of federal comity.

A long line of federal jurisprudence makes clear that duplicative cases are not to be

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

encouraged, but to be dismissed or stayed. Fed. R. Civ. P. 42(a)(3) ("If actions before the court involve a common question of law or fact, the court may . . . issue any other orders to avoid unnecessary cost or delay"). "The well-established 'first to file' rule allows a district court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal court." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994) (dismissing case under first-to-file doctrine). The first-to-file rule promotes efficiency "and should not be disregarded lightly." *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982).

As to cases pending in this district, such as the three duplicative cases here, the Ninth Circuit has gone so far as to encourage district courts to issue a dismissal instead of a stay. After all, "dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the comprehensive disposition of litigation." *Adams v. California Dept. of Health Services*, 487 F.3d 684, 692 (9th Cir. 2007) (affirming district court's dismissal of a duplicative suit that involved the same causes of action brought in the same district, notwithstanding addition of new federal and statutory claims).

As to cases pending in another district, the policy against duplicative litigation is so strong that this Court can even enjoin the parties from prosecuting their case. "It is well-established that when a case is brought in one federal district court and the complaint embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case." *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 723-24 (2d Cir. 2010) (internal quotation marks omitted) (holding it an abuse of discretion for district court in second-filed action to adjudicate claims that were pending in another district court); *U.S. v. Alpine Land & Reservoir Co.*, 174 F.3d 1007 (9th Cir. 1999) (affirming district court's injunction of related action brought in state court); *Telephonics*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

*Corp. v. Lindly & Co.*, 291 F.2d 445, 446 (2d Cir. 1961) (affirming injunction); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941) (reversing denial of injunction).

It is no answer that the named representatives differ.  In the context of class action lawsuits, it is the class definition, and not the class representatives, that are relevant for purposes of federal comity and the first-to-file rule.  *Catanese v. Unilever*, 774 F.Supp.2d 684, 688 (D. N.J. 2011) (applying the first-to-file rule to transfer duplicative class action, reasoning that "the class representatives are different, but the proposed classes are identical (i.e., a nationwide class of purchasers of Breyers' ice cream containing alkalized cocoa)"); *Lovell v. United Airlines, Inc.,* 728 F. Supp. 2d 1096, 1100-01 (D. Haw. 2010) (dismissing later-filed class action); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F.Supp.2d 1287 (D. Kan. 2010) (applying the first-to-file rule and dismissing putative class action); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F.Supp.2d 686, 690 (E.D. Tenn. 2005) (applying the first-to-file rule in duplicative class action because "both actions seek certification of the same collective class"); *Peak v. Green Tree Financial Servicing Corp.*, No. 00-953, 2000 WL 973685, at *2 (N.D. Cal., July 7, 2000) (applying the first-to-file rule to dismiss duplicative class action, holding that "[t]hough the named plaintiffs are different, the issues presented in this case sufficiently duplicate those presented to the [other court] to justify dismissing this case."); *Weinstein v. Metlife, Inc.*, No. C-06-444 SI, 2006 WL 3201045, at *4 (N.D. Cal., Nov. 6, 2006) ("[I]t is the class, not the representative, that is compared."). Federal comity applies even if the first-filed action has not yet been certified as a class or collective action.  *Id.* at *5 (staying second action despite the fact that the first-filed action had not been certified).

**IV.    Applicable law prohibits Defendants' consolidation proposal.**

If this Court holds litigants to the procedures under Rule 23 and the rules of federal comity, Defendants' motion to consolidate can be denied as moot.  But even if this Court seeks

11

an alternate procedure, Defendants' consolidation proposal should be rejected as it is legally impermissible, prejudicial, and ineffective.

Defendants' proposed method of consolidation has three parts: (1) consolidate *Pappas* and *Marchewka* with *Sandys*, and later consolidate the third action (*Evans*) if the case is transferred to this Court, (2) consolidate all future actions that are related and come within this district, and (3) order a master consolidated complaint.   There is no legal support permitting the consolidation of these class actions, the Ninth Circuit prohibits the consolidation of future actions, and there is no precedent permitting a master consolidated complaint over plaintiff's objection.

### A.   There is no legal authority for consolidating class actions that seek to represent the same class and assert the same claims.

"Consolidating actions is proper when . . . . consolidation would avoid unnecessary cost or delay."  *Mills v. Beech Aircraft Corp., Inc.,* 886 F.2d 758, 761-62 (5th Cir. 1989) (affirming denial of consolidation because it would yield no benefit).  In the classic consolidation situation, two different plaintiffs bring similar claims.  *See, e.g., E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998) (consolidating claims of different employees bringing similar discrimination claims).

Here, however, the later-filed cases here all involve the *same* parties, and the *same* putative class.  This is not a situation where one suit seeks to represent a class of New York consumers, and another suit seeks to represent a class of Florida consumers.  Instead, all the later-filed actions seek to represent a national class of consumers already represented in *Sandys*, for claims already brought in *Sandys*.  When such duplicative class actions are filed, each seeking to represent the same class, there is no reason to depart from the first-to-file rule.  Because consolidation would yield no benefit, there is no legal authority to allow consolidation of these

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

duplicative cases.

In fact, it took an act of Congress to permit consolidation in private securities class actions, 15 U.S.C.A. § 78u-4(a)(3)(B)(ii).  Congress did not extend this consolidation procedure to class actions outside the securities context.[4]  *See, e.g., Sparano v. Lief*, 10CV2079 BTM BLM, 2011 WL 830109 at *2 (S.D. Cal. Mar. 3, 2011) (consolidating derivative actions because "no party has objected to consolidation" but refusing to use the appointment procedures governing securities actions because "no such statute addressing the appointment of a lead plaintiff in derivative actions.").

Defendants purport to cite cases that permit the consolidation of class actions. Defendants' Motion at 3.  But none permit the consolidation Defendants seek.  Some of the cases Defendants cite consolidated the suits under 15 U.S.C.A. § 78u-4 – a ***statute that does not apply to non-securities class actions such as the ones here***.  *Schueneman v. Arena Pharmaceuticals, Inc.*, 10CV2335 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) (consolidating private securities class actions under the lead plaintiff selection procedure mandated by § 78u-4, but refusing to consolidate a case that did not bring federal securities law violations); *Mohanty v. BigBand Networks, Inc.,* C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) (consolidating securities class actions under the lead plaintiff selection procedure mandated by § 78u-4); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161 (C.D. Cal. 1976) (not

---

[4] This case not being a private securities case, § 78u-4's permission of consolidation does not apply.  But even if the statute permitted the procedure the additional plaintiffs seek, Sandys would be the lead plaintiff, and she would be entitled to select the counsel to represent the class for the court's approval.  The statute creates a rebuttable presumption that the lead plaintiff is the plaintiff who filed the complaint and who has the largest financial interest.  15 U.S.C.A. § 78u-4(a)(3)(B)(iii).  No other plaintiff filed the first complaint but Plaintiff Sandys.  No other plaintiff has a larger financial interest, as Sandys is the only plaintiff seeking punitive damages and other monetary relief.  Thus, Sandys would be the lead plaintiff, and she may select counsel to represent the class, subject to the court's approval.  15 U.S.C.A. § 78u-4(a)(3)(B)(v) (the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

ruling on but involving the consolidated complaints brought by different plaintiffs alleging securities fraud).

Some of the cases Defendants cite involved a ***motion to consolidate that was not opposed by any plaintiff,*** unlike the situation here. *Ferguson Corinthian Colleges Inc.*, SACV 11-0127 DOC, 2011 WL 1519352 at *2 (C.D. Cal. Apr. 15, 2011) (granting consolidation upon the request of plaintiffs and their counsel in both actions); *Hawecker v. Sorensen*, 1:10-CV-00085 OWW, 2011 WL 1560809 at *1 (E.D. Cal. Apr. 22, 2011) (granting consolidation where all plaintiffs joined the motion to consolidate and the defendant did not oppose consolidation); *Sparano v. Lief*, 10CV2079 BTM BLM, 2011 WL 830109 at *2 (S.D. Cal. Mar. 3, 2011) (same).

Finally, the remaining cases Defendants cite ***did not involve consolidation of class actions at all.*** *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774 (9th Cir. 1977) (involving consolidation of several individual actions brought by the next-of-kin of airplane crash victims killed in a collision of commercial airliner and a military jet, discussing the appointment of lead counsel to guide the individual actions, mentioning a single class action was filed but that the case could not proceed as a class action under governing law); *In re Adams Apple, Inc.,* 829 F.2d 1484, 1487 (9th Cir. 1987) (noting that "[t]he district court did not formally consolidate the cases," not discussing the propriety of consolidation, and holding appeal in "consolidated" bankruptcy cases to be moot); *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 994, 994 n6 (C.D. Cal. 1984) (consolidating without objection an individual's habeas corpus petition and a separate class action that both challenged the Immigration and Naturalization Service's voluntary departure procedure, and granting consolidation, class certification, and a permanent injunction in the same decision); *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of California*, 877 F.2d 777, 777 (9th Cir. 1989) (involving consolidation of two non-class actions filed by the same law firm); *Huene v. United States*, 743 F.2d 703, 705 (9th Cir. 1984) (ruling on the

14

appealability of an order disposing of one consolidated case, but not opining on the appropriateness of consolidating a married couple's Freedom of Information Act claim against the IRS with the couple's later suit seeking the release of related information).

**B.    The Ninth Circuit prohibits the consolidation of future suits yet to be filed.**

Defendants ask this Court to consolidate *future* related actions.  Defendants' Proposed Order at 1:25-26.  Yet the Ninth Circuit squarely prohibits consolidation of cases not yet filed. "Rule 42 may be invoked only to consolidate actions already pending." *Pan Am. World Airways, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 523 F.2d 1073, 1080 (9th Cir. 1975) (holding that a court cannot order notice to other airplane victims of pending suits to bring unnamed victims before the court);  Fed. R. Civ. P. 42 Advisory Committee Notes to 2007 Amendment (stating that the subsequent amendment of Rule 42 has no substantive effect; "[t]hese changes are intended to be stylistic only.").

Defendants unsuccessfully cite *Leone v. Moore*, C 07-4073PJH, 2007 WL 2972639 (N.D. Cal. Oct. 10, 2007) to support their contention that this Court can consolidate cases not yet pending.  Defendants' Motion at 6:8-12.  Yet *Leone* involved a federal securities case, falling within the consolidation procedures mandated by 15 U.S.C.A. § 78u-4.   In permitting consolidation of private securities class actions, Congress recognized that consolidation would work a grave injustice when used without special notice procedures to inform class members of the suit.  Thus, under § 78u-4, notice must be published within 20 days of the complaint to give *all* members of the class – not just those who filed duplicative lawsuits – the ability to be considered for lead plaintiff position in securities class actions.

Such pre-certification notice procedures were not done here, and are not even permitted here. *Pan Am*, 523 F.2d at 1080. Defendants have no legal authority for seeking consolidation of future suits, and their request should be denied.

### C.    A master consolidated complaint is not allowed over Plaintiff's objection.

Without the consent and cooperation of all the plaintiffs' counsel, requiring a consolidated complaint will no doubt become a hotly contentious process, yielding enormous delay and risk the denial of due process.  Nonetheless, Defendants cite several cases to support its hope that this Court order a master consolidated complaint.  Defendants' Motion at 7-8.  Yet none of these cases ordered a consolidated complaint over plaintiff's objection.  Such an order "would abandon completely the general notion that a plaintiff may control his action."  *See Hawaii-Pacific Venture Capital Corp.*, 564 F.2d at 1346 (9th Cir. 1977) (affirming denial of shareholder's intervention in class action).

For example, Defendants cite *Sparano*, where each of the three plaintiffs moved to consolidate, "no party ha[d] objected to consolidation," and no party objected to a consolidated complaint.  *Sparano v. Lief,* 10CV2079 BTM BLM, 2011 WL 830109 at *1 (S.D. Cal. Mar. 3, 2011) (permitting plaintiffs' requested consolidation of derivative claims brought on behalf of a pharmaceutical company).

In the other case cited by Defendants, the Court permitted consolidation and, in passing, ordered a consolidated complaint because the other plaintiff would have to be joined as a necessary party under Fed. R. Civ. Proc. 19(a).  *Thomas E. Seidel v. United States*, 5:09-CV-04875-JF, 2011 WL 1120023 at *2 (N.D. Cal. Mar. 28, 2011) (ordering consolidation in taxpayers' suits where both sought recovery of the same $200,000 in funds obtained by the IRS, where the IRS applied the money to one taxpayer under the theory that the other taxpayer was its alter ego).  Here, the later-filed plaintiffs are not necessary parties, and thus a consolidated complaint serves no such function.

**V.    Consolidation would yield no benefit to the swift administration of justice.**

Consolidation would do nothing but crowd this Court with more lawyers.  Sandys' complaint already includes all the claimants and all the claims in the later-filed actions.  Sandys can find no reason why it is necessary – or even beneficial – for multiple cases to represent the same consumers and pursue the same claims against the same defendants.  Every unnamed class member has ample opportunity to ensure adequate representation, and unnamed class members should not be rewarded with a special "consolidated status" by their filing of superfluous lawsuits.

Consolidating these cases bring all the benefit of an umbrella in a tsunami.  The joint complaint process would have to be repeated when – as is likely – another duplicative case is filed.  Or a seventh.  Or a seventieth.  Fairness would dictate that this Court give these newly named plaintiffs and their counsel the same opportunity as given to the named plaintiffs *Pappas, Evans,* and *Marchewka.*  If these competing class representatives get a seat at the table, then why not another class representative who files a month from now?  A year from now?  Because this Court cannot consolidate actions that have not yet been filed, *Pan Am. World Airways*, 523 F.2d at 1080, this Court would have to permit consolidation *again*, order *another* joint complaint, and comb through *even more* opposing motions for lead counsel. Rule 23 was enacted to avoid this absurdity.

For example, had this Court merged the four duplicate cases when Defendants requested on November 21, the joint complaint process would be underway when the fifth duplicative case, *Park v. Naked Juice Co. of Glendora, Inc. et al.,* No. LA CV 11-09677 GHK (CWx), filed in California state court, might be removed to this court.  Are counsel to stop and wait until every duplicative case is filed before proceeding with their claims?  Or are counsel to undergo the expensive and likely contentious process of agreeing to yet another master consolidated

17

1   complaint upon every duplicative suit?

2       For what purpose?   What would the new class members achieve that Rule 23's

3   intervention, objection, and opt-out procedures don't already provide?

4       Because consolidation would yield no benefit, it should be denied. *Mills,* 886 F.2d at 761-

5   62 ("[c]onsolidating actions is proper when . . . . consolidation would avoid unnecessary cost or

6   delay").

7   **VI.      Consolidation would cause undue prejudice.**

8       When, as here, consolidation's resulting "savings to the judicial system are slight, the risk

9   of prejudice to a party must be viewed with even greater scrutiny."  *Cantrell v. GAF Corp.*, 999

10  F.2d 1007, 1011 (6th Cir. 1993).  Not only would consolidation yield immense delay – making

11  its savings to the judicial system downright nonexistent – but consolidation would create

12  additional prejudice that render the procedure worse than useless.

13      Consolidation will prejudice the other class members who have not filed duplicative

14  suits, requiring them to satisfy the strict requirements for intervention while rewarding those

15  litigants who filed needless suits rather than following Rule 23's procedures.  The purpose of the

16  class action device is to prevent multiple suits – not encourage them by awarding their attorneys

17  with co-lead status.

18      The consolidation process and the encouragement of additional duplicative suits would

19  create a disincentive to settlement, negotiation, and even the simplest scheduling orders.

20  Consolidation has already caused Sandys a two-week delay in obtaining a response from

21  Defendants, and Defendants tried to use the risk of consolidation to create an indefinite delay.

22  *See* Defendants' Ex Parte Motion for an Extension of Time, filed November 14, 2011.  If the

23  cases are consolidated, Defendants will likely attempt to use consolidation to further delay their

24  response on the merits.

18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

Because Sandys makes claims and seeks remedies that the later-filed actions do not, consolidation will prejudice Sandys's discovery process. Unlike the plaintiffs in the later-filed cases, Sandys will seek discovery of evidence showing Defendants' intent (for her claims of intentional torts and punitive damages); discovery of the nature, identity, and method of processing the undisclosed "natural flavors" and the genetically modified ingredients in the Defendants' beverages, and other facts. *See Mills v. Beech Aircraft Corp., Inc.,* 886 F.2d 758, 761-62 (5th Cir. 1989) (affirming the denial of consolidation because the plaintiff sought discovery of evidence that would not be sought in the other actions).

Whereas *Pappas* and *Evans* base almost all of their challenges to certain ingredients being "not juice," Sandys challenges the ingredients for other reasons, such as being genetically modified or prepared from federally regulated toxins and pollutants, contrary to the expectations Defendants create by their eco-friendly brand. By joining Sandys' action with these "not juice" actions, Sandys risks confusion that would materially impact her claims. *See Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010, 1011, 1012 n3 (6th Cir. 1993) (suggesting the district court improperly consolidated two employees' asbestos claims because "[t]he potential for prejudice resulting from the consolidation of a cancer case with a non-cancer case is obvious," but holding the error was not preserved for appeal because no objection was made at trial).

**VII.    The Motion to Consolidate and Motion to Appoint Interim Co-Lead Counsel filed by Pappas, Evans, and Marchewka illustrate the inefficiencies of consolidation.**

*Pappas, Evans,* and *Marchewka* filed a Motion to Consolidate and Appointment of Interim Co-Lead in these respective cases. Their Motion was not filed in the *Sandys* action, but their Motion seeks to consolidate the *Sandys* suit. They improperly seek to have the four cases consolidated with the *Pappas* action, Case No. 2:11-cv-08276. *Pappas* et al. Proposed Order at 2:18. This would be the incorrect case number, as *Sandys* is the first-filed action, and *Sandys* is

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS

the lowest-numbered case, Case No. 2:11-cv-08007.

Their Motion to Consolidate is, in effect, a motion to intervene.  Pappas, Evans, and Marchewka fail to justify intervention and fail to demonstrate inadequate representation because "no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty."  *Wade,* 673 F.2d at 186 n7.

Because they cannot successfully intervene, they cannot successfully seek other court action, including appointment as interim lead counsel.  Courts have thus defnied a request for lead counsel appointment due to the failure of sufficient basis for intervention.[5]   *Waudby v. Verizon Wireless Services, LLC*, 248 F.R.D. 173, 175 (D. N.J. 2008) (denying unnamed class member's motion to intervene because his interests were already represented in the class action, denying his counsel's motion to be appointed interim lead, and appointing instead the attorney who drafted the complaint as lead counsel).

In *Waudby*, as here, a class member attempted to claim control of a class action.  In *Waudby,* unlike here, the class member filed a proper motion to intervene, rather than duplicative lawsuits.  248 F.R.D. at 174.  The Court denied intervention motion because class member had no interest that was not already represented in the class action and because he had not identified why "the disposition of the action may ... impair or impede his ability to protect his interest."  *Id.* at 175.  (internal quotation marks omitted).  Because the Court denied intervention, his attorney was left "without a basis for becoming interim class counsel," *id.* at 177, and "cannot be interim lead counsel." *Id.* at 175.  The Court then appointed the attorneys who drafted the complaint as interim lead.  *Id.* at 177.

---

[5] In a separate motions filed concurrently, Sandys moves this Court to appoint her counsel as Interim Lead Counsel.

20

## CONCLUSION

For the foregoing reasons, Sara Sandys respectfully request this Court **DENY** Defendants' Motion for Consolidation, and **STAY**, dismiss, or enjoin all duplicative or related cases pending final judgment in the present action, including *Pappas v. Naked Juice Co. of Glendora, Inc., et al.*, No. LA CV-11-08276; *Marchewka v. Naked Juice Co. of Glendora, Inc.*, No. SA CV-11-01701; and *Evans v. Naked Juice Co. of Glendora, Inc., et al.*, No. LA CV-11-9412-GW (PJWx).

Dated: November 28, 2011

THE GOLAN FIRM
Yvette Golan

By: /s/ Yvette Golan
Yvette Golan

BERG & ANDROPHY
David Berg

Attorneys for Plaintiff SARA SANDYS

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE RELATED CLASS ACTIONS