1  BERG & ANDROPHY
   DAVID BERG (*pro hac vice* to be filed)
2  CHRIS GADOURY (*pro hac vice* to be filed)
   3704 Travis St.
3  Houston, TX 77002
   Telephone: (713) 529-5622
4  dberg@bafirm.com
   cgadoury@bafirm.com
5
   THE GOLAN LAW FIRM
6  YVETTE GOLAN (*by pro hac vice*)
   1919 Decatur St.
7  Houston, TX 77007
   Telephone: (866) 298-4150 ext. 101
8  ygolan@tgfirm.com
9
   FLASHPOINT LAW, INC.
10 SHIRISH GUPTA (SBN 205584)
   1900 S. Norfolk Street, Suite 350
11 San Mateo, CA 94403
   Telephone: (650) 539-4019
12 sgupta@flashpointlaw.com

13 Attorneys for Plaintiff Sara Sandys

14              **UNITED STATES DISTRICT COURT**

15          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16

17 SARA SANDYS and all others similarly       Case No. LA CV11-08007-JAK (PLAx)
   situated,
18                                            **PLAINTIFF'S NOTICE AND MOTION**
                          Plaintiff,          **FOR ORDER APPOINTING INTERIM**
19                                            **LEAD CLASS COUNSEL AND**
           v.                                 **SUPPORTING MEMORANDUM OF**
20                                            **POINTS AND AUTHORITIES;**
   NAKED JUICE COMPANY, a California
21 corporation; PEPSICO INC., a New York       **SUPPORTING DECLARATIONS OF**
   corporation; and DOES 1-100,                **DAVID BERG AND YVETTE GOLAN**
22                                            **FILED CONCURRENTLY HEREWITH**
                          Defendants.
23                                            Hearing
                                              Date:    December 19, 2011
24                                            Time:    1:30 p.m.
                                              Place:   Courtroom 750, 7th Floor
25
                                              Action Filed: September 27, 2011
26

27

28
   ─────────────────────────────────────────────────────────
        PLAINTIFF'S MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on December 19, 2011 at 1:30 p.m., or at such other date and time as the Court may provide, Plaintiff Sara Sandys will and hereby do move the Court for an Order granting the following relief: appointing the law firms of Berg & Androphy and The Golan Law Firm, as interim lead class counsel pursuant to Federal Rule of Civil Procedure 23(g).

This Motion is made pursuant to Federal Rule of Civil Procedure 23(g), and is based upon this Notice; the concurrently filed Memorandum of Points and Authorities; the concurrently filed Declarations of David Berg and Yvette Golan in support thereof; and such evidence and argument as the Court may consider appropriate or as may be presented at or before any hearing on this motion.

This Motion is made following the conference of Plaintiffs' counsel in the *Pappas, Marchewka, and Evans* Actions, pursuant to L.R. 7-3, which took place on November 11, 2011, with a follow up on November 14, 2011, and the Pappas Group's Joint Motion to Consolidate and to be appointed interim co-lead counsel, with the following results: Counsel for the Pappas Group oppose this motion and have filed their own Motion to be Appointed Interim Lead Counsel in *Pappas*, such Motion not filed in the *Sandys* action.

Dated: November 28, 2011                THE GOLAN FIRM
                                        Yvette Golan


                                        By: /s/ Yvette Golan
                                              Yvette Golan

                                        BERG & ANDROPHY
                                        David Berg

                                        Attorneys for Plaintiff SARA SANDYS

1

2

## **TABLE OF CONTENTS**

3    INTRODUCTION…………………………...……………………...……………………1

4    ARGUMENT & AUTHORITIES…………………………...………...…………………....2

5          I.     Legal Standard…………………………...…………………………...…………2

6    .
          II.    The B&A Group conducted the original investigation in this litigation
                 and has performed a substantial amount of work in identifying potential
7                claims. ………………...…………………………………...……………………3

8                A.     The B&A Group's Work and Investigation.. ……………………......3

9                B.     The Pappas Group's Efforts………………...…………………………5

10         III.   The B&A Group has extensive experience in trying and litigating complex
                  litigation, including class actions……………………...…………………….... 7
11
          IV.    The B&A Group will commit the necessary financial resources, staffing,
12                and time to adequately represent the class………………………………………9

13         V.     The B&A Group is well versed in the applicable law…………………….....10

14         VI.    Other factors demonstrate the B&A Group will fairly and adequately
                  represent the interests of the class……………………...…………………….. 11
15

16    CONCLUSION………………………...…………………………...……………………12

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

## <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Carlin v. DairyAmerica, Inc.</u>,
    No. 109CV0430 AWI-DLB, 2009 WL 1518058 (E.D. Cal. May 29, 2009).........................4

**RULES**

Fed. R. Civ. P. 23(g)(2)....................................................................................................1, 2

Fed. R. Civ. P. 23(g)(1)(A)-(B) ............................................................................................3

Fed. R. Civ. P. 23(g)(2)(A) ..................................................................................................3

Rule 23 ..................................................................................................................................11

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(2)**

Plaintiff, through her attorneys, hereby submits this memorandum in support of her motion for appointment of David Berg and the law firm of Berg & Androphy, and Yvette Golan and the law firm of The Golan Firm (collectively, the "B&A Group") as Interim Lead Class Counsel in the pre-certification phase of these proceedings.

**INTRODUCTION**

In the hopes of capturing the expanding market of environmentally- and health-conscious consumers willing to pay more for all-natural beverages, Naked Juice Co.[1] and its parent company, PepsiCo Inc., labeled many of their juice beverage products as "all natural" "100% juice" and as containing no genetically modified organisms or ingredients ("non-GMO"), and made other false representations.  After an extensive factual investigation of food chemistry and the ingredients used in Defendants' beverages, Plaintiff Sara Sandys filed a putative national class action in this Court against Defendants on September 27, 2011, seeking to end their fraud.

Not surprisingly, unnamed class members wanted a seat at the table.  Duplicative suits were soon filed,[2] bringing the same claims against the same Defendants, seeking to represent the same class of consumers.  Defendants filed a Motion to Consolidate these duplicative actions with the *Sandys* complaint.  Later that day, three of these duplicative suits filed a joint motion to consolidate the four cases and to appoint their counsel as interim lead counsel (collectively, the

---

[1] Upon information and belief, Naked Juice Co. of Glendora, Inc. commonly does business as "Naked Juice Co.," and Defendants have accepted service of process on Naked Juice Co.  *See* Joint Stipulation Extending Time to Answer Complaint, October 18, 2011.  In addition, every bottle of Naked Juice identifies "Naked Juice Co." as the product's manufacturer, not "Naked Juice Co. of Glendora, Inc."

[2] *Pappas v. Naked Juice Co. of Glendora, Inc., et al.*, No. LA CV-11-08276 PSG (JEM) (filed October 5) ("Pappas"), which has been transferred to this Court; *Marchewka v. Naked Juice Co. of Glendora, Inc.*, No. SA CV-11-01701 DOC (RNPx), filed on November 7 ("Marchewka"), which has been transferred to this Court; and (3) *Evans v. Naked Juice Co. of Glendora, Inc., et al.*, No. LA CV-11-9412-GW (PJWx), filed on November 10 ("Evans").

1   "Pappas Group"), excluding Sandys' chosen attorneys.  This motion was not filed in the *Sandys*

2   action, but in the *Pappas* action. By separate motion, Sandys also opposes Defendants' Motion

3   to Consolidate the Related Class Actions.

4         Sandys respectfully moves this Court to appoint her counsel as Interim Lead Counsel in

5   *Sandys v. Naked Juice Co. et al.* The B&A Group's extensive experience and success in

6   conducting complex litigation and representing large plaintiff classes qualify them to serve as

7   interim lead counsel.  Moreover, unlike any other counsel requesting to be appointed lead,

8   including the Pappas Group, the B&A Group conducted the original investigation that first

9   identified the factual and legal claims, and filed the first complaint that publicly disclosed the

10  Defendants' wrongs. The B&A Group's continued factual investigation remains unmatched.

11  Their efforts in drafting their complaint, though duplicated in subsequently filed lawsuits that

12  added nothing new, remains the most factually developed complaint, seeking the full array of

13  remedies available and bringing the full panoply of claims.  The B&A Group's methodical and

14  time-intensive investigation of the food ingredients, the drafting of their complaint which was

15  filed before any other complaint, and their other analytical and investigative work counsels

16  strongly in favor of their appointment as interim lead counsel.

17

18

19                              **ARGUMENT & AUTHORITIES**

20  **I.     Legal Standard**

21        Rule 23(g)(2) provides this Court with authority to appoint interim class counsel prior to

22  determining whether this action can proceed as a class action. Appointment of interim class

23  counsel is necessary to ensure that the rights of absent potential class members are adequately

24  protected during the precertification phase of a class action.

25

26        Recognizing that it will usually be important for an attorney to take action to prepare for

27  a class certification decision before class certification, this Court may appoint interim class

28
                                             2

counsel before class certification. See FED. RULE CIV. PRO. 23(g)(2)(A), Advisory Committee Notes for the 2003 Amendments, Subdivision (g), Paragraph (2)(A).  The rule now explicitly provides that interim class counsel may be appointed before class certification to take discovery, make or respond to motions, discuss settlement or perform other necessary precertification actions. *Id*.

The criteria for appointment of interim class counsel are the same as the criteria for the appointment of class counsel following certification.  In appointing interim class counsel, a Court is to consider:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law;

- the resources that counsel will commit to representing the class; and

- any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

FED. R. CIV. PROC. 23(g)(1)(A)-(B) (listing the first four factors as mandatory and the last as permissive).

## II.   The B&A Group conducted the original investigation in this litigation and has performed a substantial amount of work in identifying potential claims.

### A.   The B&A Group's Work and Investigation

As counsel in the first action to be filed, the B&A Group conducted the original investigation that first identified the factual and legal claims forming the basis of all the later-filed actions. The complaint in *Sandys* was based on their extensive factual and legal investigation, and did not rely on any other governmental action or investigation.  Declaration of David Berg at ¶¶ 3-6; Declaration of Yvette Golan at ¶¶ 4-13.

3

In the class action context, the attorneys who drafted the first complaint and completed the first investigation are presumptively the most qualified to be lead counsel. "[T]he process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken." MOORE'S FEDERAL PRACTICE § 23.120 [3][a]. In fact, this factor is so important in a class action that "when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who have not undertaken those tasks." *Id*.

Thus, courts often use this factor to lead its selection of lead counsel. For example, in *Carlin v. DairyAmerica, Inc.*, No. 109CV0430 AWI-DLB, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009), the district court was presented with competing motions for appointment as class counsel. Since all the attorneys had "adequate experience in class actions and complex litigation, adequate knowledge of the applicable law and abundant resources," the Court made its selection based on work counsel has done in identifying or investigating potential claims, and selected the firm that "has done a majority of the preparation work leading to the filing of these actions, including investigation into the alleged misconduct and identification of the legal theory of the case. Indeed, a simple comparison of the original complaint in this action with the two filed by Hagens Berman reveals that they are almost identical." *Id.*

The B&A Group, through Yvette Golan, performed the key investigation that first identified the potential claims in the action, including a methodical and time-intensive investigation of the ingredients Defendants used in their beverages, the sources of those ingredients, food ingredient production methods, Naked Juice and PepsiCo's knowledge thereof, differences in molecular structures of various ingredient formulations, and the health and environmental effects thereof. The B&A Group consulted with experts, trade groups, scientific

4

and academic literature.  The B&A Group examined federal and trade databases, international databases, learned treatises, and other sources.  The B&A group investigated and analyzed the claims made by the Defendants on Naked Juice packaging and the non-juice and non-"all natural" ingredients contained in Naked Juice products.  The B&A group analyzed the non-juice and non-"all natural" ingredients by conducting research using scientific texts, government documents from the Food and Drug Administration and the Department of Agriculture, food-related public interest groups, and publicly available information from the Defendants.   The B&A Group conducted a thorough legal analysis regarding the applicability and viability of each substantive cause of action asserted and each required element of class certification.  The B&A Group also conducted extensive research regarding federal food-related regulations, FDA policy, and common law precedent on food-labeling issues.  Decl. of Y. Golan at ¶¶ 4-13; Decl. of D. Berg at ¶¶ 3-6.

Also, unlike many class actions, the B&A Group did not have the benefit of any non-profit group's prior investigation, any prior regulatory investigation or complaint, any previously filed legal complaint, or any of the other common crutches that many other class action attorneys use.  Decl. of Y. Golan at ¶¶ 7-8.

The B&A Group wrote the *Sandys* complaint, a detailed and comprehensive complaint that reflects the care and commitment they devoted, and will continue to devote, to this litigation. In particular, the *Sandys* complaint presents the most complete factual investigation and seeks the most complete remedy.  The B&A Group was also the first to file suit, and the *Sandys* action was the first to publicly uncover the Defendants' wrongs.  Decl. of D. Berg at ¶¶ 3-6; Decl. of Y. Golan at ¶¶ 4-9.

The B&A Group continues the factual investigation necessary in this litigation.  The B&A Group has consulted with experts, compared Defendants' products with competing

5

products, arranged independent testing of Defendants' products, analyzed food testing methodologies, and is seeking experts in the fields of food production, food additives, consumer behaviors, branding, economic damages, and other areas. The B&A Group also continues to further investigate and develop the legal claims asserted in *Sandys*. Decl. of D. Berg at ¶¶ 3-6, 16; Decl. of Y. Golan at ¶¶ 16-19.

## B.    The Pappas Group's Efforts

In contrast, a reading of the complaints in *Pappas, Evans*, and *Marchewka* demonstrates that the Pappas Group have not conducted any significant factual investigation beyond determining that certain ingredients are "not juice" (*Pappas* and *Evans*) or reading Sandys's complaint (*Marchewka*).

Moreover, the quality of the Pappas Group's respective complaints demonstrate their relatively weaker dedication to the class. For example, the *Sandys* complaint includes well-researched allegations regarding the food chemistry and processing methodologies used to manufacture the challenged beverage ingredients, compared to the *Pappas* and *Evans* complaints that simply allege that they are "not juice." *Compare Sandys'* Compl. ¶¶ 85-103, to *Pappas* Compl. ¶¶ 32 *et seq*.; *Evans* Compl. ¶¶ 33 *et seq.* The *Marchewka* complaint relies heavily on the *Sandys'* complaint and scientific investigation. *Compare, e.g., Sandys'* Compl. ¶ 85 (stating niacinamide preparation methodology of esterifying nicotinic acid with methanol, followed by ammonolysis or of passing ammonia gas into molten nicotinic acid or from partial hydrolysis of 3-cyanopyridine); *with Marchewka* Compl. ¶ 49 (stating same, in a footnote disclosing it relies on same source cited by Sandys). When it does vary from the *Sandys'* complaint, it adds information culled from sources such as Wikipedia, describing the way Defendants *might* have processed a beverage ingredient, a distinction the *Sandys* complaint takes great care to make. *Compare Marchewka* Compl. ¶ 49 (discussing synthetic biotin production method used in 1949)

6

*with Sandys'* Compl. ¶ 104 ("Some additional ingredientys, such as biotin, may be synthetic depending upon Defendants' method of production.").

The Pappas Group's investigation and evidentiary basis is not befitting a class action, and it is not conduct that justifies forcing Sandys to relinquish control of her own litigation or forego selecting her own counsel.

### III.   The B&A Group has extensive experience in trying and litigating complex litigation, including class actions.

The B&A Group are uniquely well-equipped to serve as interim lead class counsel. Originally founded in 1968, Berg & Androphy is currently an eleven-attorney litigation and trial boutique headquartered in Houston, with satellite offices in New York, Philadelphia, Washington, D.C., and Denver.   The B&A Group possesses extensive experience litigating complex class actions and other representative actions and in leading complex investigations, including investigations on behalf of the United States.  *See* Decl. of D. Berg at ¶¶ 7-13, and Exhibit 1 thereto. Indeed, the firm has been appointed as lead counsel in numerous class and representative *qui tam* actions.  *Id.* at ¶¶ 12-13, and Ex. 1.

David Berg graduated in 1967 from the University of Houston Law Center. Mr. Berg has tried virtually every kind of civil and criminal case to a verdict, from murder to patent infringement, representing plaintiffs and defendants throughout the country. In 2003, Mr. Berg authored **THE TRIAL LAWYER: WHAT IT TAKES TO WIN**, a practice guide on trial practice and procedure, which has become one of the ABA's best selling books. As of 2011, **BEST LAWYERS IN AMERICA** has recognized Mr. Berg in nine separate categories of litigation. In 2010, B&A partner Joel Androphy was named among the nation's top 75 plaintiff's lawyers by AmLaw Daily.  Decl. of D. Berg at ¶¶ 7-8.

Yvette Golan graduated Cornell Law School *magna cum laude* in 2002, whereupon she

PLAINTIFF'S MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

clerked for Judge J. Clifford Wallace of the Ninth Circuit Court of Appeals, in San Diego, CA. Ms. Golan continued her litigation career at the Chicago office of Kirkland & Ellis LLP, where she defended major corporations in complex class actions, including multiple state-wide and national class actions against General Motors for alleged engine, coolant, and cooling system defects.  Ms. Golan then relocated to Texas, where she continued her legal work but focused her time in the business arena, acquiring significant experience in the consumer products industry, including sourcing, distribution, and retailer networks.  Ms. Golan then returned full-time to the practice of law, forming the Golan Firm to focus on food-related class action litigation.  Decl. of Y. Golan at ¶¶ 1-3, 14.

Christopher Gadoury, a partner at B&A, graduated *cum laude* from the University of Houston Law Center in 2001. Mr. Gadoury practices in the areas of complex commercial litigation, securities and shareholder litigation, white collar criminal defense, class actions, and appeals.  Prior to joining B&A as an associate in 2007, Mr. Gadoury worked in the Houston office of Susman Godfrey LLP, another nationally-reputed law firm with a history of exemplary success in class actions.  Among other matters, Mr. Gadoury defended Wal-Mart in a class action based on alleged gender-based employment discrimination.  Decl. of D. Berg at ¶ 9.

B&A is a nationally-recognized firm specializing in complex litigation that has many years of experience in successfully prosecuting claims for fraud, including in the class action context.  Representing plaintiffs, Mr. Berg and B&A have won hundreds of millions of dollars in verdicts and settlements.    In addition, B&A has recovered hundreds of millions for whistleblowers and federal and state governments in *qui tam* actions.   The firm has also successfully represented corporate clients in litigation and class actions, including Westinghouse, CBS, Samsung, Robert Bass' Acadia Partners, L.P., XO Communications, Inc.'s Special Committee of Independent Directors, Deutsche Bank, Credit Suisse, and other major companies.

8

Decl. of D. Berg at ¶¶ 10-13.

As lead counsel, B&A has an exemplary track record of success in representing plaintiffs in complex class actions.  For example, Mr. Berg and B&A obtained a $420 million settlement as lead class counsel on behalf of thousands of hotel franchisees, alleging fraud and breach of fiduciary duty against Marriott International and Host Marriott. Cause No. 96-CI-08327; *A.R. Milkes and D.R. Burklew, et al. v. Host Marriott Corp., et al.*; 285th Judicial District Court of Bexar County, Texas. B&A also served as lead counsel for Plaintiffs in a five state class action against SBC Communications, Inc. alleging misrepresentations related to SBC's DSL service. Cause No. 00-4540-E; *McLaughlin, et al. v. SBC Communications, Inc., et al.*; In the 347th Judicial District Court, Nueces County, Texas.  Decl. of D. Berg at ¶¶ 10-13.

Similarly, B&A is one of the nation's leading firms in bringing *qui tam* actions under the False Claim Act, suing on behalf of federal and state governments for fraud perpetrated against them.  To date, B&A has recovered hundreds of millions of dollars in settlements and fines on behalf of federal and state governments and the whistleblowers it represents.  Decl. of D. Berg at ¶ 12.

B&A currently serves as lead counsel in numerous *qui tam* actions currently filed and under seal.  Of those not under seal, some of the firm's recent successes include:

(a) $1.350 billion in total recovered in representing one of nine whistleblowers against Eli Lilly in a *qui tam* action involving off-label marketing of the drug Zyprexa. This civil settlement netted the government and all whistleblowers about $750 million. The government also received an additional $600 million in criminal fines.

(b) $13.7 million recovered in B&A's representation for whistleblower and government against American Grocers in a *qui tam* action involving the alteration of expiration dates on food products sent to American troops in the Middle East.

(c) $119 million recovered in B&A's representation of a whistleblower against King Pharmaceuticals in a *qui tam* action involving the underpayment of Medicaid rebates, false claims, and best price violations.

(d) $45 million recovered in B&A's representation for whistleblowers and

9

government against Pfizer in a *qui tam* action involving the underpayment of Medicaid rebates, false claims and best price violations for the drug Lipitor.

(e) $1.78 million recovered for whistleblowers and government against Rotech in a *qui tam* action for false or fraudulent conduct in billing Medicare for durable medical equipment.

Decl. of D. Berg at ¶ 12.  Thus, the B&A Group has the requisite experience and knowledge to adequately represent the class.

**IV.     The B&A Group will commit the necessary financial resources, staffing, and time to adequately represent the class.**

The B&A Group has and will continue to commit all necessary resources required to zealously prosecute this action and adequately represent the class – including the needed and significant financial investment and the substantial time of its attorneys, giving each stage of litigation the care and attention it requires. B&A's enormous success in obtaining hundreds of millions of dollars in verdicts and settlements not only provides B&A with the financial resources to prosecute actions of this nature, but it also enables B&A to be extremely selective in what cases it accepts to handle. For every case in which the Firm chooses to accept representation, B&A likely turns down a dozen – and never churns through cases in an assembly-line fashion or submits motions that are boilerplate.  B&A's high degree of selectivity enables it to consistently provide the highest degree of legal representation and professional service to its clients.  Decl. of D. Berg at ¶¶ 16-17; Decl. of Y. Golan at ¶¶ 16-19.

**V.     The B&A Group is well versed in the applicable law.**

The B&A Group has extensive knowledge regarding the common law and statutory causes of actions asserted in this case, as well the regulatory framework governing food and juice manufacturers.  Decl. of D. Berg at ¶¶ 14-15; Decl. of Y. Golan at ¶¶ 1-3, 5, 9-14, 16.  B&A's knowledge is demonstrated in its complaint, which asserts the full panoply of claims and seeks the most comprehensive remedy.

PLAINTIFF'S MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

B&A has vast experience in prosecuting claims for fraud, breach of contract and warranty, negligence, negligent misrepresentation, assault and battery, and other similar claims. B&A has represented clients, classes, and governments in cases involving white collar crimes, fraud, and other deceptive conduct, recovering hundreds of millions in verdicts, settlements, and fines in such cases. Decl. of D. Berg at ¶¶ 7-13, and Ex. 1 thereto. The B&A Group will continue to use such skill and knowledge in prosecuting this case.

The B&A Group also has experience in litigating complex food cases such as the case here. For example, the B&A Group is in the midst of discovery in *Bates v. Kashi et al.*, a putative national class action challenging food labeling fraud such as the one here. Decl. of Y. Golan at 14.

The B&A Group has experience in litigating cases governed under California law and has conducted extensive legal research regarding both the California common law and statutory claims asserted in this case. Decl. of D. Berg at ¶¶ 7-15, and Ex. 1 thereto; Decl. of Y. Golan at ¶¶ 1-3. Ms. Golan also formerly clerked in the Ninth Circuit Court of Appeals and frequently encountered legal issues governed under California law. Decl. of Y. Golan at ¶ 2. In addition, the B&A Group has engaged local California counsel that is well-versed in California law. Based on the B&A Group's experience, knowledge, research, and assistance from local counsel, the B&A Group has sufficient knowledge of the applicable law to adequately represent the class.

**VI.    Other factors demonstrate the B&A Group will fairly and adequately represent the interests of the class.**

The B&A Group's pleadings, motions, and conduct in this litigation has demonstrated its allegiance to the interests of the class, and not just to its named class representative. In comparison, the Pappas Group has demonstrated a willingness to work an end-run around Rule 23, unfairly injuring unnamed class members, and needlessly delaying resolution of the suit on

PLAINTIFF'S MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

the merits.  *See* Sandys Opposition to Defendants' Motion to Consolidate.

The Pappas Group should not be rewarded for their attempted end-run around Rule 23 and needless duplicative filings that add nothing to the originally-filed complaint.  Their superfluous lawsuits caused inherent delay and needless additional expense, risking a host of conceptual and practical problems, and thus threatening to interfere with the ultimate objective of remedying the Defendants' alleged wrongs. If they had the class's interests in mind, at the very least they would have spoken to the B&A Group before filing their suit to determine if their client's interests were being adequately represented.  They did not do even that.  Decl. of Y. Golan at ¶ 3.

The Pappas Group also requests to be appointed the *sole* counsel in this class action, excluding Sandys' attorneys from continuing their involvement in the class action they originally developed.  *See Pappas* et al. Proposed Order at 3:11-25.  Their request facially demonstrates that the Pappas Group will not "fairly and adequately represent the interests of the class."  In light of the B&A Group's efforts in prosecuting this case to date, it would be significantly inequitable and prejudicial to the interests of all class members to exclude them from continuing to represent the putative class members at the interim stage, as requested by the Pappas Group. The B&A Group has discovered and developed the factual evidence upon which the Pappas Group relies.  Because the complaints contain only a fraction of the B&A Group's evidentiary findings, *see* Decl. of Y. Golan at ¶ 4;  Decl. of D. Berg at ¶¶ 3-6, the benefits of these efforts would be lost if the B&A Group was excluded from representing the putative class.

Moreover, the Pappas Group seeks to appoint three firms as co-lead counsel, a "team" formed not for any pre-existing relationship but because each of them had filed a duplicative lawsuit.  Appointing multiple class counsel could cause duplication of effort, increased attorneys' fees, friction or lack of coordination among counsel, unnecessary complication of the litigation,

12

diminished accountability for its conduct, and diminished incentives for each firm to make its optimum contribution to the litigation.

**CONCLUSION**

For the reasons set forth in this Motion, Plaintiff requests that the Court appoint the B&A Group as interim lead class counsel during the precertification phase of these proceedings.


Dated: November 28, 2011                    THE GOLAN FIRM
                                            Yvette Golan


                                            By: /s/ Yvette Golan
                                                 Yvette Golan

                                            BERG & ANDROPHY
                                            David Berg


                                            Attorneys for Plaintiff SARA SANDYS