1  FRANCIS & MAILMAN P.C.
   JAMES A. FRANCIS (*pro hac vice* forthcoming)
2  DAVID A. SEARLES (*pro hac vice* forthcoming)
   100 S. Broad Street, 19th Floor
3  Philadelphia, PA 19110
   Tel: (215) 735-8600; Fax: (215) 940-8000
4  jfrancis@consumerlawfirm.com
   dsearles@consumerlawfirm.com
5
   CENTER FOR SCIENCE IN THE PUBLIC INTEREST
6  STEPHEN GARDNER
   5646 Milton Street Suite 211
7  Dallas, TX 75206
   Tel: (214) 827-2774; Fax: (214) 827-2787
8  sgardner@cspinet.org
9  THE GOLAN LAW FIRM            FLASHPOINT LAW, INC.
   YVETTE GOLAN (*by pro hac vice*)  SHIRISH GUPTA (SBN 205584)
10 1919 Decatur St.               1900 S. Norfolk Street, Suite 350
   Houston, TX 77007             San Mateo, CA 94403
11 Tel: (866) 298-4150 x101      Telephone:  (650) 539-4019
   Fax: (928) 441-8250           sgupta@flashpointlaw.com
12 ygolan@tgfirm.com
13 *Proposed Interim Lead Class Counsel and Attorneys for Plaintiff Sara Sandys*
14
15            **UNITED STATES DISTRICT COURT**
           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
16
17 SARA SANDYS and all others similarly    Case No. LA CV11-08007-JAK
   situated,                               (PLAx)
18
                      Plaintiff,           **PLAINTIFF'S AMENDED**
19                                         **MOTION FOR ORDER**
       v.                                  **APPOINTING INTERIM LEAD**
20                                         **CLASS COUNSEL, SUPPORTING**
   NAKED JUICE COMPANY, a                  **MEMORANDUM OF POINTS**
21 California corporation; PEPSICO INC., a  **AND AUTHORITIES;**
   New York corporation; and DOES 1-       **SUPPORTING DECLARATIONS**
22 100,                                     **FILED CONCURRENTLY**
23                      Defendants.
                                           Hearing
24                                         Date: February 6, 2012
25                                         Time: 8:30 a.m.
26                                         Place: Courtroom 750, 7th Floor
27
28                                         Action Filed: September 27, 2011

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on February 6, 2012 at 8:30 a.m., or at such other date and time as the Court may provide, Plaintiff Sara Sandys will and hereby does move the Court for an Order appointing Francis & Mailman P.C., the Center for Science in the Public Interest, and The Golan Firm, as Interim Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

This Amended Motion is made pursuant to Federal Rule of Civil Procedure 23(g), and is based upon this Notice; the concurrently filed Memorandum of Points and Authorities; the concurrently filed Declarations in support thereof; and such evidence and argument as the Court may consider appropriate or as may be presented at or before any hearing on this motion.

On January 19, 2012, Plaintiff Sandys informed Plaintiffs' counsel in the *Pappas, Marchewka, Park,* and *Evans* Actions that she would be amending this Motion.

Pursuant to L.R. 7-3, this Amended Motion is made following the conference between Defendants' counsel on January 31, 2012, and with Plaintiffs' counsel in the *Pappas, Marchewka, Park,* and *Evans* Actions on November 11, 2011, November 14, 2011, and January 31, 2012.  Counsel for the Defendants do not take a position on this Motion; Counsel for the Pappas Group oppose this motion and have filed their own Motion to be Appointed Interim Lead Counsel in *Pappas*.   Counsel for the Pappas group have not filed a Motion to be Appointed Interim Lead Counsel in the *Sandys* action.

Plaintiff Sandys informed Plaintiffs' counsel in the *Pappas, Marchewka, Park,* and *Evans* Actions that she would be amending this Motion.  Plaintiff Sandys further indicated that she would not object to the Pappas Plaintiffs' counsel withdrawing their previously filed opposition to Plaintiff Sandys' Motion to Appoint Interim Lead Class Counsel, filed November 28, 2011, and instead

1  lodging an opposition to the present Amended Motion to Appoint Interim Lead

2  Class Counsel.

3

4  Dated: February 1, 2012            THE GOLAN FIRM
                                      Yvette Golan
5

6                                     By: /s/ Yvette Golan
7                                          Yvette Golan

8                                     FRANCIS & MAILMAN P.C.
9                                     James A. Francis
                                      David A. Searles
10

11                                    CENTER FOR SCIENCE IN THE PUBLIC
                                      INTEREST
12                                    Stephen Gardner

13
                                      *Attorneys for Plaintiff SARA SANDYS and*
14                                    *Proposed Interim Lead Class Counsel*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

INTRODUCTION………………………………………...…..…………………1

ARGUMENT & AUTHORITIES………………………..…….…………….…...2

I.    Legal Standard……………………………………………………………2

II.   The Sandys Group's Extensive Work in Identifying and Investigating
      the Potential Claims in this Action………………………...……………4

      A.    *The* Sandys *Complaint*…………………………………….4

      B.    *The Related Complaints*………………………..…………5

      C.    *The Sandys Group's Investigation is Critical to the*
            *Effective Representation of the Class*………..…………8

      D.    *Post-Filing Investigation and Work*…………...………..9

III.  The Sandys Group Has Extensive Experience in Trying and Litigating
      Complex Litigation, Including Class Actions………………………10

      A.    *Francis Mailman P.C.* ………………………...………..10

      B.    *Center for Science in the Public Interest*………….………11

      C.    *The Golan Firm*……………………………………...…14

IV.   The Sandys Group will Commit the Necessary Financial Resources,
      Staffing, and Time to Adequately Represent the Class……..………15

V.    The Sandys Group is Well Versed in the Applicable Law…...........16

CONCLUSION…………………………………………………...……17

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

## TABLE OF AUTHORITIES

**CASES**

In re Cendant Corp. Sec. Litig., 404 F.2d 173, 181 (3d Cir. 2005)………...……6, 7

In re Oclaro, Inc. Derivative Litig., C-11-3176 EMC, 2011 WL 4345099, at *2 (N.D. Cal. Sept. 14, 2011)………………………………………………...……….7

Kaminske v. JP Morgan Chase Bank N.A., Nos. SACV 09-00918 JVS (RNBX), CV 09-6352-JVS (RNBX), 2011 WL 521338, at *1 (C.D. Cal. Jan. 3, 2011) ………….…...…………………………………………….………………....4

Carlin v. DairyAmerica, Inc., No. 109CV0430 AWI-DLB, 2009 WL 1518058 (E.D. Cal. May 29,………………………………………………….…..…....4

Walker v. Discover Financial Services, 2011 WL 2160889 (N.D. Ill. 2011)………4

Accord Sexton ex rel. Jones Soda Co. v. Van Stolk, C07-1782RSL, 2008 WL 1733242, at *1 (W.D. Wash. Apr. 10, 2008)……………………………….7

In re Auction Houses Antitrust Litig., 00 CIV 0648, 2001 WL 210697, at *3 (S.D.N.Y. Feb. 26, 2001)…………………………………………...……….8

**RULES**

Fed. R. Civ. P. 23(g)(2)…..............................................................................2, 3

Fed. R. Civ. P. 23(g)(1)(A)-(B)................................................................................2

Fed. R. Civ. P. 23(g)(2)(A) ...............................................................................2,3

**SECONDARY SOURCES**

NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (5th ed. 2011)…………....11

NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002)…………....19

v

Moore's Fed. Practice § 23.120(3)(a)……………………………………...………….4

Third Circuit Task Force Report on Selection of Class Counsel, 74 Temp. L. Rev. 689 (2001)……………………………………………………………………..4, 7

Stehpen J. Choi, *Motions for Lead Plaintiff in Securities Class Actions* (N.Y.U. Law & Econ. Research Paper No. 08-53, June 2009)………………….…………19

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(2)

Plaintiff Sara Sandys, through her attorneys, hereby submits this memorandum in support of her amended motion for appointment of her counsel, Francis & Mailman P.C., the Center for Science in the Public Interest, and The Golan Firm (collectively, the "Sandys Group"), as Interim Lead Class Counsel in the pre-certification phase of these proceedings in *Sandys v. Naked Juice Co. et al.* and/or in the consolidated Naked Juice cases, should this Court order consolidation.

The Sandys Group is uniquely well-equipped to serve as interim lead class counsel. The Sandys Group combines the power of experienced class action litigators, the foremost non-profit advocate for consumers in the area of deceptive food labels, and the principal investigator of the facts alleged. No other proposed interim lead counsel brings such a powerful combination to represent the class.

### INTRODUCTION

In the hopes of capturing the expanding market of environmentally-aware and health-conscious consumers who are willing to pay more for all-natural beverages, Defendants labeled their Naked Juice products as "all natural" "100% juice," and as containing no genetically modified organisms or ingredients ("non-GMO"). After an extensive investigation of Defendants' business practices and the ingredients used in their beverages, Plaintiff Sara Sandys filed the first class action in this Court against Defendants on September 27, 2011, seeking to end their deceptive labeling.

The Sandys Group's record of experience and success in similar food-related class actions, along with its relationship with the putative class, ensure it will represent the class in a way that is not only adequate, but also ideal.  Its work thus far reflects the care and commitment they devoted, and will continue to devote, to

this litigation.  The Sandys Group conducted the only true investigation of the factual allegations and their continued inquiry remains unmatched. The *Sandys* Complaint, though copied and imitated, remains the most factually developed Complaint, seeking the full array of remedies available and bringing the full panoply of claims.

## ARGUMENT & AUTHORITIES

## I. LEGAL STANDARD

Rule 23(g)(2) provides this Court with authority to appoint interim class counsel prior to determining whether this action can proceed as a class action. Appointment of interim class counsel is necessary to ensure that the rights of absent class members are adequately protected during the precertification phase of a class action.

In appointing interim class counsel, a Court should consider:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law;

- the resources that counsel will commit to representing the class; and

- any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

FED. R. CIV. PROC. 23(g)(1)(A)-(B) (listing the first four factors as mandatory and the last as permissive).

The legal standard governing the appointment of lead counsel is affected by the Court's decision on consolidation. If the cases are not consolidated (and instead

managed by Rule 42(a)(3) or under the first-to-file rule)[1], then this Court need only decide if the Sandys Group is adequate. Fed. R. Civ. Proc. 23(g)(2). If the cases are consolidated, then the Court would compare the Sandys Group to other counsel applying to be lead, such as the Pappas Group. *See* Pappas Motion to Appoint Interim Lead Counsel, No. CV 11-08276-JAK-PLAx (C.D. Cal., filed Oct. 5, 2011) (Pappas Dkt. 18).

## II. THE SANDYS GROUP'S EXTENSIVE WORK IN IDENTIFYING AND INVESTIGATING THE POTENTIAL CLAIMS IN THIS ACTION.

As a general rule, courts confer lead status on the attorneys who did "real investigation into and work on the case." *Third Circuit Task Force Report on Selection of Class Counsel,* 74 Temp. L. Rev. 689, 771-72 (2001).  Sandys' "filing of a well-prepared complaint after significant investigation is relevant 'work'." *Id.* This factor weighs heavily in Sandys' favor not simply because her case was the first-filed, but because her counsel ***completed the key investigative work***.

Not only does counsel's investigation confer a real benefit to the class, but

---

[1]     Contrary to the Pappas Group's insistence, federal appellate courts hold that the first-to-file rule applies to cases pending in the same district. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 n.28 (5th Cir. 1992); *Carter v. Nicholson*, 07-20169, 2007 WL 3316086, at *4 (5th Cir. Nov. 8, 2007). *See also Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 692 (9th Cir. 2007). District courts have similarly held that the first-to-file rule applies to cases pending in the same district. *Intervet, Inc. v. Merial Ltd.*, 535 F. Supp. 2d 112, 114 (D.D.C. 2008).
     Courts have even applied the first-to-file rule to cases pending in front of the same judge. *SAS Inst., Inc. v. Practicingsmarter, Inc.*, 353 F. Supp. 2d 614, 619 (M.D.N.C. 2005); *In re Katrina Canal Breaches Consol. Litig.*, CIV.A. 05-4182, 2009 WL 88605 (E.D. La. Jan. 12, 2009).
     For duplicative class actions, courts have dismissed the case or denied certification, and require the plaintiffs instead intervene: *Davis v. Bd. of Sch. Com'rs of Mobile County*, 517 F.2d 1044, 1047-1049 (5th Cir. 1975); *Miller v. Bd. of Ed. of Topeka Unified Sch. Dist.*, 501, 667 F.2d 946, 949 (10th Cir. 1982) ("There is no right to maintain separate actions in these circumstances."); *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348 (2d Cir. 1977); *Tompkins v. Alabama State Univ.*, 15 F. Supp. 2d 1160, 1167 (N.D. Ala. 1998) *aff'd without opinion*, 174 F.3d 203 (11th Cir. 1999).

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

courts prefer appointing the investigating counsel as lead counsel also because it has demonstrated by deed its commitment to the class. "[T]he process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken." MOORE'S FEDERAL PRACTICE § 23.120 [3][a]. In fact, this factor is so important in a class action that "when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who have not undertaken those tasks." *Id.*

Thus, faced with competing motions to appoint interim class counsel, courts will often use the work and investigation counsel has done as the ***deciding*** factor in selecting lead counsel. *See, e.g.*, *Kaminske v. JP Morgan Chase Bank N.A.*, Nos. SACV 09-00918 JVS (RNBx), CV 09-6352-JVS (RNBx), 2011 WL 521338, at *1 (C.D. Cal. Jan. 3, 2011) (appointing counsel for the first-filed plaintiffs over the objection of the later-filed plaintiffs after concluding that the firm representing the first-filed plaintiffs were in the best position to represent the class "in light of the extensive amount of research and discovery [it] has conducted, the lack of discovery conducted by [the competing firm], and the sufficiency of [its] manner of conducting the [class action] thus far"); *Walker v. Discover Financial Services*, 2011 WL 2160889 (N.D. Ill. 2011) (same); *Carlin v. DairyAmerica, Inc.*, No. 109CV0430 AWI-DLB, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (same).

### A.    The *Sandys* Complaint

The Sandys Group conducted the first and the fullest investigation of the factual allegations and legal claims.  Their Complaint was based solely on their own independent investigation.  There was no pre-existing FDA investigation, FTC investigation, or any other governmental or non-profit investigation or

4

1  complaint. Declaration of Yvette Golan at ¶¶ 4-13.

2      The Sandys Group's investigation uncovered facts never before alleged in

3  similar food-related suits.   Before *Sandys* (and another case filed by Sandys'

4  counsel, *Bates v. Kashi Co. et al.*, 3:11-cv-01967-H-BGS (S.D. Cal.), filed August

5  24, 2011), prior class actions challenging the deceptive labeling of a food or

6  beverage as "natural" challenged only a few ingredients, such as high fructose corn

7  syrup, citric acid, partially hydrogenated soybean oil, alkalized cocoa, and

8  potassium carbonate.[2]  None of these ingredients exist in Naked Juice beverages.

9      In contrast, the Sandys Group was the *first* to challenge the ingredients in

10  Naked Juice beverages as synthetic or artificial, including: niacinamide, calcium

11  pantothenate,  D-alpha  tocopherol  acetate,  cyanocobalamin,  pyridoxine

12  hydrochloride, beta-carotene, choline bitartrate, ascorbic acid, zinc methionine,

13  zine oxide, Fibersol-2, fructooligosachharides, inulin, and others. *See Sandys*

14  Complaint at ¶¶ 85 *et seq*.

15      To counsel's knowledge, *Sandys* is the first case to challenge synthetic

16  ingredients as not being the same as the vitamin it is claimed to be. To counsel's

17  knowledge, *Sandys* is also the first case to challenge food or beverage labels

18  claiming that the product contains no genetically modified ingredients – a label

19  that is false as to at least some Naked Juice products.

20  **B.   The Related Complaints**

21      The Pappas Group does not contend that they did this investigation, but

22

23  [2]    *See, e.g., Holk v. Snapple Beverage Corp.,* No. 07-3018 (MLC) (D. N.J.
    filed June 29, 2007) (high fructose corn syrup); *Von Koenig v. Snapple Beverage*
24  *Corp.,* No. 2:09-cv-00606 FCD EFB (E.D. Cal. filed March 4, 2009) (same); *Ries
    v. Hornell Brewing Co., Inc.*, No. 10-1139-JF (PVT) (N.D. Cal. filed Mar. 17,
25  2010) (high fructose corn syrup and citric acid); *Henderson v. Gruma Corp.*, No.
    10-cv-4173 AHM (AJWx) (C.D. Cal. filed Aug. 26, 2010) (partially hydrogenated
26  soybean oil, also challenging trans fats in dips); *Astiana v. Ben & Jerry's
    Homemade, Inc.*, Nos. C 10-4387 PJH (N.D. Cal. filed  Sept. 29, 2010) and C 10–
27  4937 PJH (N.D. Cal. filed Nov. 1, 2010) (alkalized cocoa, potassium carbonate).

28
PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

instead summarily dismiss its importance and its extent.  *See* Pappas Opposition to Sandys' Motion to Appoint Interim Lead Counsel (Dkt. 50) at 3:13-19 (citing a blogger's musings of the identity of "natural flavors" and cases challenging different ingredients, see *supra* note 2).

In comparison to Sandys' factually robust Complaint, counsel in the related actions filed skeletal complaints based on scant investigation (*Pappas* and *Evans*), and complaints that are essentially copies of the *Sandys* Complaint (*Park* and *Marchewka*). The "filing of a skeletal complaint is no 'work' at all." *Third Circuit Task Force Report on Selection of Class Counsel,* 74 Temp. L. Rev. 689, 771-72 (2001). And filing duplicate class actions does not benefit the class, and is not even "work" that permits the recovery of attorneys' fees. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) (denying attorney fees to Finkelstein Thompson, one of the firms in the Pappas Group, because filing a "substantially identical" complaint "do not benefit the class").

Instead of investigating the nature and production of the Naked Juice ingredients, as the Sandys Group did, the *Pappas* and *Evans* Complaints simply allege that the ingredients are "not juice." *Pappas* Complaint at ¶¶ 32-40; *Evans* Complaint at ¶¶ 33-41.  The only ingredients Pappas and Evans contend are not natural are ascorbic acid and soy lecithin.  *See Pappas* Complaint at ¶¶ 13-14, *Evans* Complaint at ¶¶ 13-14. Pappas and Evans claim that soy lecithin is not natural because *bleached lecithin* is not natural. However, bleached lecithin is a different ingredient altogether. *Id.* Compared to the work completed by the Sandys Group, the "investigation" done in the *Pappas* and *Evans* Complaints is so scant that it can hardly be called "work" at all.

The *Park* and *Marchewka* Complaints also fail to demonstrate any "work" done by counsel. The *Park* Complaint copies word-for-word significant portions of the *Sandys* Complaint. *Compare, e.g., Sandys* Complaint at ¶ 112 *with Park*

1   Complaint at ¶ 31; *Sandys* Complaint at ¶ 122 with *Park* Complaint at ¶ 33; *Sandys*

2   Complaint at ¶ 141- 144 with *Park* Complaint at ¶ 35-38. *Park's* remaining factual

3   allegations are little more than a re-edited version of the *Sandys* Complaint.

4   *Compare, e.g.*, *Park* Complaint ¶¶ 18-25 *with Sandys* Complaint ¶¶ 25-45.

5       The *Marchewka* Complaint relies heavily on the facts and sources disclosed

6   in the *Sandys* Complaint, or on sources such as Wikipedia (whose descriptions of

7   how some ingredient *can be* produced is of questionable reliability and

8   questionable relevance). *See Marchewka* Compl. at ¶¶ 24-65. While the

9   *Marchewka* Complaint wisely avoids being an obvious "copy" of the *Sandys*

10  Complaint, it remains little more than a rewording of the *Sandys* Complaint.

11      In fact, the Third Circuit refused attorney fees for Marchewka's counsel,

12  Finkelstein Thompson, for their filing of similarly duplicative litigation. *See, e.g.*,

13  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) (denying fees to

14  Finkelstein, Thompson & Loughran, "which did nothing more than file a complaint

15  that was substantially identical to dozens of other complaints filed in this

16  litigation.").

17      "[S]uch copycat complaints do not benefit the class, and are merely

18  entrepreneurial efforts taken by firms attempting to secure lead counsel status." *In*

19  *re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005). *Accord Sexton ex*

20  *rel. Jones Soda Co. v. Van Stolk*, C07-1782RSL, 2008 WL 1733242, at *1 (W.D.

21  Wash. Apr. 10, 2008) ("it is almost impossible to paint Mr. Baum's initiation of

22  this second federal derivative action as an act taken in the best interests of the

23  company . . . by filing a competing copycat action, Mr. Baum initiated a

24  shareholder battle and increased the costs of this litigation with no appreciable

25  benefit to the company or the absent shareholders"); *In re Oclaro, Inc. Derivative*

26  *Litig.*, C-11-3176 EMC, 2011 WL 4345099, at *2 (N.D. Cal. Sept. 14, 2011)

27  (listing "whether one complaint is simply a 'copycat action' of another" as a factor

28

7

in selecting lead counsel); *In re Auction Houses Antitrust Litig.,* 00 CIV. 0648, 2001 WL 210697, at *3 (S.D.N.Y. Feb. 26, 2001) (refusing to apply a multiplier to interim lead counsel fees because reasoning that the complaint was based on a New York Times story, and thus was not a claim "ferreted out by industrious counsel who invested substantial time and effort against a chance of success. . . ." but ". . . was much more like finding a pot of gold in the middle of the sidewalk.").

## C.   The Sandys Group's Investigation is Critical to the Effective Representation of the Class

The Sandys Group's investigation and findings are not simply worthy of rewards, but necessary to the class's substantive claims. To prove liability, counsel must show that Naked Juice labels are false or misleading – and to do so in a way that is appropriate for class action treatment. Thus, food chemistry will be a central and recurring thread throughout the litigation. Only the Sandys Group is able to shoulder this duty. The Sandys Group's clear expertise is apparent upon comparison of the Sandys Group's Fibersol-2 allegations to that of the Pappas Group's Fibersol-2 allegations. As disclosed in the *Sandys* Complaint, Fibersol-2 is a digestion-resistant maltodextrin developed by Matsutani Chemical Industry Co., Ltd. Fibersol-2 is produced by the enzymatic hydrolysis of cornstarch through "a proprietary process to purposefully arrange corn starch molecules . . ." *Sandys* Complaint at ¶ 101. The Pappas Group's best-articulated allegations of Fibersol-2 allege the same facts, citing in footnotes its reliance on www.fibersol2.com and the same website disclosed in the *Sandys* Complaint. *Marchewka* Complaint at ¶¶ 42-43 (citing www.matsutaniamerica.com/fs2/bioavailability.php).

Fibersol-2 is not natural, and only the Sandys Group conducted the necessary investigation to make this required showing. The Sandys Group gathered evidence from Matsutani Chemical Industry *directly*, including product specifications that are not available online, and scientific and technical papers the

8

Japanese company relied upon.  The Pappas Group did not.  Of the groups bringing actions, only the Sandys Group has *evidence* that Fibersol-2 is produced through treating cornstarch with hydrochloric acid, and that Fibersol-2 contains 1→2 and 1→3 linkages and levoglucosan, which are not present in cornstarch. The Sandys Group is also the only group with evidence of the effect of Fibersol-2 on sugar tolerance and sugar absorption and how the structural formula of Fibersol-2 compares to natural maltodextrins.

The *Pappas* and *Evans* Complaints take a slightly different tack.  Instead of alleging that the Naked Juice ingredients are synthetic or highly processed, they allege that the ingredients are "not juice."  *See Pappas* Complaint at ¶¶ 32-40; *Evans* Complaint at ¶¶ 33-41.  Their allegations avoid scientific inquiry, yet the on-the-package long ingredient lists of the plainly "non-juice" substances opens their claims to serious challenges as to whether the labels are deceptive, whether consumers relied, and whether the representations were material.

 "Moreover, insofar as counsel's adequacy depends on what functions counsel is being appointed to perform, the distinctive pre-certification functions of counsel might also inform the adequacy inquiry." NEWBERG ON CLASS ACTIONS § 3:85 (5th ed.) Specifically, *interim* lead counsel would be responsible for presiding over the articulation of a consolidated complaint (if one is ordered), perform discovery, and argue the motion for class certification.  The Sandys Group's analysis of the various products and ingredients is the most complete, and its investigation of the defendants' knowledge and intent remain unmatched.

**D. Post-Filing Investigation and Work**

The Sandys Group continues the factual investigation that is necessary in this litigation. The Sandys Group has consulted with experts in the fields of food production, food additives, consumer behaviors, branding, economic damages, and other areas. The Sandys Group has tested Naked Juice products at independent

9

laboratories, and continues to further investigate and develop the legal claims asserted in *Sandys*.  Decl. of Y. Golan at ¶¶ 16-19.

Sandys and her counsel have also shown themselves able and willing to protect the class's interests.  For example, the Sandys Group was the only counsel to request seeing Defendants' experts' reports on class certification *before* filing their class certification motions. *Compare Sandys* Joint Rule 16(b) Report (Dkt. 54), Ex. B at 2, *with Pappas* Joint Rule 16(b) Report (*Pappas* Dkt. 31) at 10 (proposing to file their class certification motion on Columbus Day, October 8, and permitting Defendants to provide their experts' reports on class certification two-and-a-half months later, on December 21).

## III. THE SANDYS GROUP HAS EXTENSIVE EXPERIENCE IN TRYING AND LITIGATING COMPLEX LITIGATION, INCLUDING CLASS ACTIONS.

### A. Francis & Mailman P.C.

Originally founded in 1998, Francis & Mailman P.C. concentrates its practice in consumer protection litigation. Francis & Mailman possess extensive experience litigating complex class actions and other representative actions and in leading complex investigations. The firm represents consumers in individual actions, as well as through class action lawsuits, in the areas of unlawful consumer credit reporting, employment background screening, fair debt collection, unfair and deceptive trade practices litigation, breach of warranty, and other consumer matters. The firm's attorneys have significant litigation experience both in federal and state trial courts. *See* Declarations of James A. Francis and David A. Searles. Indeed, the firm has been appointed as lead counsel in numerous class actions. *Id.* at ¶¶ 4, 4 and 6, respectively.  Some of Mr. Francis' and Mr. Searles' notable class action trial successes include *Samuel-Bassett v. Kia Motors America, Inc.*, __ A.3d __, 2011 WL 6059098 (Pa. 2011) ($5.6 million verdict for class of Pennsylvania

car purchasers, plus award of attorney's fees upheld by Pennsylvania Supreme Court); *Little v. Kia Motors America, Inc.*, 2003 WL 25568765 (N.J. Super. L. 2003) ($6 million (approximate) verdict for class of New Jersey car purchasers); *Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201 (E.D. Pa. 2011); *Roethlein v. Portnoff Law Associates, Ltd.*, 25 A.3d 1274 (Pa. Cmwlth Ct. 2011) (Pennsylvania class action tried to a trial verdict of $1,058,697 against a debt collection law firm on behalf of a class of homeowner taxpayers, recently affirmed by the Commonwealth Court of Pennsylvania).

### B. Center for Science in the Public Interest

The Center for Science in the Public Interest ("CSPI") has served as the organized voice of the American public on nutrition, food safety, health and other issues since the early 1970s. CSPI has long sought to educate the public, advocate government policies that are consistent with scientific evidence on health and environmental issues, and counter industry's powerful influence on public opinion and public policies.

CSPI's Litigation Project[3] was created as a non-profit law firm in 2004, to provide experienced lawyers to represent plaintiffs in a variety of state and federal lawsuits. The Litigation Project has obtained binding settlements resulting in more honest labeling of artificial ingredients and halting deceptive marketing. Litigation, or the threat of litigation, has spurred many companies to change their marketing practices, including removing artificial trans fats from their foods and reducing the marketing of junk foods to kids.

Some of CSPI's notable class actions include:

---

[3]   Subsequent references to CSPI herein are limited to the non-profit law firm that is CSPI's Litigation Project, and do not refer to the many other methods of advocacy in which CSPI as an organization engages outside of litigation. See www.cspinet.org for additional background CSPI's advocacy efforts.

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

- **Vitaminwater**. CSPI's Litigation Project serves as co-counsel in a class action lawsuit challenging the labeling of Vitaminwater.[4] Under the name Glaceau, Coca-Cola markets Vitaminwater as a healthful alternative to soda by labeling its several flavors with such health buzz words as "defense," "rescue," "energy," and "endurance." The company made a wide range of dramatic claims, including that its drinks reduce the risk of chronic disease, reduce the risk of eye disease, promote healthy joints, and support optimal immune function. In fact, the 33 grams of sugar in each bottle of Vitaminwater do more to promote obesity, diabetes, and other health problems than the vitamins in the drinks do to perform the advertised benefits listed on the bottles. Despite the names of the drinks, such as "endurance peach mango" and "focus kiwi strawberry," Vitaminwater contains between zero and one percent juice.

- **Aurora Dairy.** CSPI serves as co-counsel in a lawsuit[5] against Aurora Dairy, the second-largest organic milk company. Aurora produced non-organic dairy products that it sold as "organic." Consumers pay premium prices for organic products, but in this case—due to the illegal behavior of Aurora—they paid premium prices for non-organic products.

- **Airborne**. CSPI and private counsel successfully negotiated an approved class action settlement relating to the supplement Airborne, which was misleadingly advertised as preventing colds.[6] The settlement resulted in distribution of approximately $12 million in cash to class members and an additional approximately $7,000,000 in *cy pres* grants directed (in varying amounts) to organizations that submitted proposals for research and education projects related to colds and dietary supplements.

CSPI's threat of litigation has halted misleading ads and labels by Tropicana, Quaker Oats, Frito-Lay, and other major food companies, including Cadbury Schweppes' misleading labeling of 7-Up and Snapple as "natural," Sara Lee's misleading labeling of white bread as being "made with whole grain," Betty Crocker's "carrot" cake mix, and Aunt Jemima's "blueberry" waffles. In another

---

[4]    *In re: Glaceau Vitaminwater Marketing and Sales Practices Litigation (No. II)* Case No. 1:11-md-00215-DLI-RML E.D.N.Y.).

[5]    *In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation*, No. 4:08-md-01907-ERW (E.D. Mo.).

[6]    *Wilson v. Airborne*, Case No. EDCV 07-770-VAP (OPx) (C.D. Cal.),

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

case settled prior to litigation, CSPI's negotiations with the major soft drink companies culminated in an agreement in which Coca-Cola, PepsiCo, and Cadbury Schweppes agreed to phase-out sugary soft drinks from schools. In a landmark pre-suit settlement with CSPI and others, Kellogg Company agreed to adopt nutrition standards for the foods it advertises to young children, and agreed to stop sponsoring product placements in children's media and to stop advertising in preschools and elementary schools.

CSPI's Litigation Director Stephen Gardner is a highly experienced and nationally recognized class action authority. He is a member of the bars of New York, Texas, and the District of Columbia, as well as numerous federal courts (including the Ninth Circuit). Mr. Gardner has been a consumer lawyer for over 35 years, serving as an Assistant Dean of Southern Methodist University Law School, an Assistant Attorney General in Texas and New York, the Students' Attorney at the University of Texas at Austin, and a legal services attorney. Prior to joining CSPI in 2004, he was in private practice. Mr. Gardner has written and lectured extensively on a wide variety of consumer law and class action issues, including:

- NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002) (contributing editor)

- CONSUMER CLASS ACTIONS (National Consumer Law Center, 5th ed.) (contributing author)

- THE PRACTICE OF CONSUMER LAW (National Consumer Law Center) (co-author)

- NAT'L ASS'N OF CONSUMER ADVOCATES, STANDARDS AND GUIDELINES FOR LITIGATING AND SETTLING CONSUMER CLASS ACTIONS, REVISED, 255 F.R.D. 215 (2009); original Guidelines, 176 F.R.D. 375 (1998) (principal author)

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

- *Litigation as a Tool in Food Advertising: A Consumer Advocacy Viewpoint,* LOYOLA LAW REVIEW, Vol. 39, No. 1 (2006)

- *Lost in the Supermarket: Consumer Confusion and Marketing Mania, in* NUTRITION LABELING HANDBOOK 373 (Shapiro ed., 1995).

Mr. Gardner has appeared on behalf of the class in several dozen class actions, and has testified as an expert witness in cases on food and drug law issues, as well as approximately 20 cases on class action certification issues.

### C. The Golan Firm

Through the work of Yvette Golan, the Golan Firm spearheaded the investigation of Naked Juice's labeling practices, its ingredients' nature and production, and defendants' knowledge of the mislabeled beverages.  She has defended national class actions in science-based complex litigation, including in asbestos and automotive defects, providing a valuable perspective in the tactics and strategies of defense counsel. From 2005 to 2010, she also gained business experience in the consumer products industry, including the manufacturing, distribution, and pricing methodologies used by companies such as Defendants.

Ms. Golan graduated Cornell Law School *magna cum laude* in 2002, whereupon she clerked for Judge J. Clifford Wallace of the Ninth Circuit Court of Appeals. Ms. Golan continued her litigation career at the Chicago office of Kirkland & Ellis LLP, where she defended major corporations in complex class actions, including multiple statewide and simultaneous national class actions against General Motors for alleged engine, coolant, and cooling system defects. Ms. Golan then relocated to Texas, where she continued her legal work while gaining business perspective in the consumer products arena, including sourcing, distribution, and retailer networks.  Last year, Ms. Golan formed the Golan Firm to focus on food-related class action litigation. Decl. of Y. Golan at ¶¶ 1-3, 14.

## IV. THE SANDYS GROUP WILL COMMIT THE NECESSARY FINANCIAL RESOURCES, STAFFING, AND TIME TO ADEQUATELY REPRESENT THE CLASS.

The Sandys Group has and will continue to commit all necessary resources required to zealously prosecute this action and adequately represent the class.  The Sandys Group is prepared to invest significant financial resources and devote substantial time of its attorneys and support staff in order to give each stage of litigation the care and attention it requires.

Francis & Mailman's enormous success in obtaining millions of dollars in verdicts and settlements not only provides the Sandys Group with the financial resources to prosecute actions of this nature, but it also enables Francis & Mailman to be extremely selective in what cases it accepts to handle. For every case in which the firm chooses to accept representation, Francis & Mailman likely turns down a dozen – and never churns through cases in an assembly-line fashion or submits motions that are boilerplate. Francis & Mailman's selectivity enables it to consistently provide the highest degree of legal representation and professional service to its clients. Declaration of James A. Francis.

CSPI's lawyers and investigators are thoroughly familiar with food and nutrition class actions (as discussed in more detail below). They monitor the many food and nutrition class actions pending in this country, and offer assistance and counsel in many of them. CSPI is also very selective in bringing class actions, choosing to become involved and lend its expertise only to the most significant cases.

The Sandys Group brings still other resources to assist the class. For example, Ms. Golan's independent laboratory testing of Naked Juice beverages and data from the suppliers for Naked Juice ingredients, especially coupled with CSPI's industry relationships, provides the class with factual resources that have

15

yet to be duplicated by any counsel in any of the related actions.

In comparison to Sandys' careful selection of counsel that each bring something valuable and unique to the litigation, the Pappas Group is an amalgamation of all the firms who filed a duplicative class action, combining counsel for *Pappas, Marchewka*, and *Evans* as proposed interim lead counsel, and counsel in *Park* as part of the "Executive Committee." The selection of co-lead counsel seems to "simply reflect bargaining among lawyers for their own stake in the case, and not serve the best interests of the class." 7 NEWBERG ON CLASS ACTIONS § 22:7 (4th ed.). *See also* Stephen J. Choi, *Motions for Lead Plaintiff in Securities Class Actions* at 36 (N.Y.U. Law & Econ. Research Paper No. 08-53, June 2009), available at http://ssrn.com/abstract=129392 (conducting an empirical evidence of the increased attorneys fees common with such co-lead arrangements, and recommending courts be wary of aggregation that "may simply represent a bargain struck among plaintiffs' attorneys rather than the best representative for the class.").

## V.     THE SANDYS GROUP IS WELL VERSED IN THE APPLICABLE LAW.

The Sandys Group has extensive knowledge regarding the common law and statutory causes of actions asserted in this case, as well the regulatory framework governing food and juice manufacturers.

Francis & Mailman has proven experience in prosecuting claims for consumer fraud, breach of contract and warranty, and the Sandys Group will continue to use such skill and knowledge in prosecuting this case.

CSPI's lawyer Stephen Gardner brings a breadth and depth to food and nutrition lawsuits such as this one. When he started the Litigation Project, there were almost no food and nutrition class actions. As the Litigation Project built upon success after success, private lawyers began to bring food and nutrition cases

16

1    in significant number. Although some of the private cases were copycat lawsuits to

2    CSPI's own efforts, the overall result has been an increase in honest marketing of

3    foods, so that consumers can make better nutrition choices when they purchase

4    products. *See* Declaration of Stephen Gardner.  Mr. Gardner himself is one of the

5    most-experienced and respected consumer lawyers in the country, as evidenced by

6    the nature and scope of his writing and the variety of class actions in which he has

7    been directly involved.

8         In addition, the Sandys Group has engaged local California counsel that is

9    well-versed in California law. Since graduating from the University of Chicago

10   Law School in 1999, Shirish Gupta has been practicing complex civil litigation,

11   securities and shareholder litigation, intellectual property litigation, consumer class

12   actions, employment class actions, and commercial litigation. Declaration of

13   Shirish Gupta at ¶ 3. He has been counsel of record in numerous class actions

14   involving California law, including *Bates v. Kashi Co. et al.* (mislabeled food

15   products as "all natural,"), *Patel v. Apple Computer* (misleading iPhone signal

16   meter readings), *Baker v. Adobe* (deceptive consumer practices), and other cases.

17   He has been recognized as a SuperLawyers Rising Star in 2010 and 2011. In

18   addition, he was awarded the Best Under 40 award by the National Asian Pacific

19   American Bar Association. Decl. of S. Gupta at ¶¶ 3-7.

20                                   **CONCLUSION**

21        For the reasons set forth above, Plaintiff Sara Sandys requests the Court

22   appoint her counsel, Francis & Mailman P.C., the Center for Science in the Public

23   Interest, and The Golan Firm (collectively, the "Sandys Group"), as Interim Lead

24   Class Counsel in the pre-certification phase of these proceedings in *Sandys v.*

25   *Naked Juice Co. et al.* and/or in the consolidated Naked Juice cases, should this

26   Court order consolidation.

27

28
PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

1

2

3    Dated: February 1, 2012            THE GOLAN FIRM

4                                       Yvette Golan

5

6                                       By: /s/ Yvette Golan

7                                           Yvette Golan

8                                       FRANCIS & MAILMAN P.C.

9                                       James A. Francis
                                        David A. Searles
10

11                                      CENTER FOR SCIENCE IN THE
                                        PUBLIC INTEREST
12                                      Stephen Gardner

13                                      *Attorneys for Plaintiff SARA SANDYS
                                        and Proposed Interim Lead Class
14                                      Counsel*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

## CERTIFICATE OF SERVICE

I, Yvette Golan, certify as follows:

I am employed in the County of Harris, State of Texas. I am over the age of eighteen years and am not a party to this action. My business address is 1919 Decatur Street, Houston, Texas 77007, in said County and State. I certify that on the date indicated below, I electronically transmitted to the Clerk and to each of the persons names below, who are registered as CM/ECF Users and have consented to electronic service, the following documents using the CM/ECF System:

- PLAINTIFF'S AMENDED MOTION FOR ORDER APPOINTING INTERIM LEAD CLASS COUNSEL

- SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

- DECLARATION OF STEPHEN GARDNER IN SUPPORT

- DECLARATION OF JAMES A. FRANCIS IN SUPPORT

- DECLARATION OF DAVID A. SEARLE IN SUPPORT

- DECLARATION OF YVETTE GOLAN IN SUPPORT

- DECLARATION OF SHIRISH GUPTA IN SUPPORT

- PROPOSED PRETRIAL ORDER

**Attorneys for Defendants**

DANIEL W. NELSON
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue,N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 530-4238
DNelson@gibsondunn.com

CHRISTOPHER CHORBA
DHANANJAY S. MANTHRIPRAGADA
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Tel: (213) 229-7000
Fax: (213) 229-7520
CChorba@gibsondunn.com
DManthripragada@gibsondunn.com

1

I further certify that on the date indicated below, I caused each such document to be transmitted by PDF format via electronic mail to the parties and electronic mail address named above, and that the transmission was reported complete and without error. The foregoing document was printed on recycled paper.

**Attorneys for Plaintiff Pappas**

TINA WOLFSON
ROBERT AHDOOT
AHDOOT & WOLFSON, P.C.
10850 Wilshire Blvd., Suite 370
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com

**Attorneys for Plaintiff Marchewka**

ROSEMARY M. RIVAS                     TRACY D. REZVANI
DANIELLE A. STOUMBOS                  ROBERT O. WILSON
FINKELSTEIN THOMPSON, LLP             FINKELSTEIN THOMSON LLP
100 Bush Street, Suite 1450           1070 30th Street NW, Suite 150
San Francisco, California 94104       Washington,DC 20007
Tel: (415) 398-8700                   Tel: (202) 337-8000
Fax: (415) 398-8704                   Fax: (202) 337-8090
rrivas@finkelsteinthompson.com        trezvani@finkelsteinthompson.com
dstoumbos@finkelsteinthompson.com     rwilson@finkelsteinthompson.com

**Attorneys for Plaintiff Evans**

CHRISTOPHER P. RIDOUT
DEVON M. LYON
CALEB MARKER
RIDOUT & LYON, LLP
555 E. Ocean Blvd., Suite 500
Long Beach, California 90802

Tel: (562) 216-7380
Fax: (562) 216-7385
c.ridout@ridoutlyonlaw.com
d.lyon@ridoutlyonlaw.com
c.marker@ridoutlyonlaw.com


**<u>Attorneys for Plaintiff Park</u>**
LIONEL ZEVI GLANCY
MICHAEL M. GOLDBERG
MARC L. GODINO
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 900067
Tel: (310) 201-9150
Fax: (310) 201-9160
lglancy@glancylaw.com
mgodino@glancylaw.com
mmgoldberg@glancylaw.com

     I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.


DATED: February 1, 2012          THE GOLAN FIRM
                           Yvette Golan
                           By:   <u>/s/ Yvette Golan</u>
                               Yvette Golan

                       *Attorney for Plaintiff Sara Sandys*